MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 25
Docket:      Pen-19-107
Argued:      January 8, 2020
Decided:     February 25, 2020

Panel:       SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

MICHAEL WUESTENBERG et al.

v.

HARRY J. RANCOURT III et al.

JABAR, J.

[¶1]  The plaintiffs, Michael and Rosemarie Wuestenberg, appeal the Superior Court's (Penobscot County, *Mallonee, J.*) decision in favor of defendants, Harry and Stephanie Rancourt, following a fifteen-day bench trial on the Wuestenbergs' claims against the Rancourts arising from the Wuestenbergs' purchase of the Rancourts' house.  The trial court's factual findings were supported by the evidence and the court made no legal errors in deciding in favor of the Rancourts.  We affirm the decision of the Superior Court.

---

*  Although Justice Alexander participated in the appeal, he retired before this opinion was certified.

## I. BACKGROUND

[¶2]   The trial court made the following factual findings, which are supported by the record.  *See Vermont Mut. Ins. Co. v. Ben-Ami*, 2018 ME 125, ¶ 2, 193 A.3d 178.  Because the trial court denied the Wuestenbergs' motion for further factual findings, *see* M.R. Civ. P. 52(b), we consider only the findings and conclusions explicitly rendered by the court.  *See Ehret v. Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101.

[¶3]  The Rancourts, though "millwrights by trade," have carried on a side business of building and selling houses for a number of years.  In the early 2000s, the Rancourts built a family home for themselves that was not intended to be sold as part of their business, using design plans, called the "Gardner plans," that they purchased from a southern architectural firm.  The court found that the Gardner plans were designed for home construction in the south, "where the snow load a house must bear is substantially less than that in northern New England; as a result, the house would have been structurally inadequate even had it been built exactly as . . . designed.  As finally built, the house deviated from [the Gardner] plans in ways that further compromised its design integrity."  Additionally, the court found that the Rancourts' adjustments

further "compromised the safety and durability of the house" and "increased the hazard of catastrophic failure."

[¶4]  After living in the house for more than a decade and raising their son there, in March 2013 the Rancourts decided to sell their home and entered into a purchase and sale agreement with the Wuestenbergs.  The original agreement required that the Rancourts provide "blueprints" of the house. Although unclear to the Rancourts at the time the agreement was entered, it was later understood that the "blueprints" referred to the Gardner plans.  The Gardner plans' whereabouts were unknown to the Rancourts, however, and the parties agreed to substitute building specifications.  The Gardner plans were later discovered and turned over during the course of litigation.  Despite the fourteen pre-closing inspections that the agreement allowed, the Wuestenbergs had only one inspection performed before the sale was finalized. The home inspector discovered and reported a few minor items needing potential remediation, but listed "None" next to Material Defects.

[¶5]  The house's deficiencies first came to light shortly after the sale. Although the house was "substantially flawed from the tip of the roof to the drainage system underneath," the Rancourts "were as surprised as the

4

Wuestenbergs to learn of the existence and magnitude of the deficiencies identified *after* the transaction."  (Emphasis added.)

[¶6]   The Wuestenbergs sought to pursue mediation shortly after discovering the defects.  Unfortunately, the Rancourts were living and working out of state at the time and did not receive the Wuestenbergs' mediation requests until they returned a few months later.  The Wuestenbergs filed a complaint in Superior Court in July 2014, alleging counts arising from the house's sale and defects.  As amended in 2016, the complaint included the following counts: (1) Fraud—False Representation and Active Concealment; (2) Fraud—Failure to Disclose Known Defects; (3) Fraud—Material Misrepresentation as to Existence of Gardner Plans; (4) Negligent Misrepresentation; (5) Breach of Implied Warranty of Workmanlike Construction; (6) Breach of Implied Warranty of Habitability; (7) Negligence; (8) Strict Liability; (9) Violation of the Unfair Trade Practices Act (UTPA); (10) Punitive Damages; and (11) Breach of Contract—Purchase and Sale Agreement.  During the pretrial process, the court granted summary judgment for the Rancourts on Counts 5, 6, and 8.

[¶7]  The court held a fifteen-day bench trial on the remaining counts in 2018.  On January 15, 2019, the court issued extensive findings and granted

judgment in favor of the Rancourts on Counts 1-4, 7, and 9-11. Following the court's denial of the Wuestenbergs' motion for further findings of fact, the Wuestenbergs timely appealed. *See* M. R. App. P. 2B.

## II.  DISCUSSION

[¶8]  Our review is confined to the trial court's explicit findings, *see Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101; M.R. Civ. P. 52(b), which we review "for clear error and will affirm . . . if they are supported by competent evidence in the record, even if the evidence might support alternative findings of fact." *Handrahan v. Malenko*, 2011 ME 15, ¶ 13, 12 A.3d 79 (quotation marks omitted).  As the party with the burden of proof at trial, the Wuestenbergs must establish on this appeal that contrary findings were compelled by the evidence. *See id.*

[¶9]  The Wuestenbergs purport to raise a number of issues in this appeal, but they can be reduced to the pivotal issue of whether the Rancourts possessed the requisite knowledge with respect to the Wuestenbergs' claims. The court's findings that the Rancourts lacked the requisite knowledge are amply supported in the record, which includes hundreds of exhibits and transcripts from fifteen days of trial.  The Wuestenbergs' individual arguments are addressed in turn.

A.    Count 1 (Fraud—False Representation and Active Concealment) & Count 2 (Fraud—Failure to Disclose Known Defects)

[¶10]  The Wuestenbergs first argue that the trial court denied their claims for false representation and failure to disclose based on an erroneous finding that the Rancourts lacked the requisite knowledge of the home's defects.  Specifically, the Wuestenbergs contend that the Rancourts (1) made false representations and actively concealed certain defects in the home, and (2) failed to disclose known structural deficiencies resulting from their construction of the home.  On both counts they contend that the Rancourts committed common law fraud and violated 33 M.R.S. § 173(5) (2018).

[¶11]  The sellers' knowledge of the defects is a necessary element for both counts.  Pursuant to 33 M.R.S. § 173(5), the Rancourts were required to disclose to the Wuestenbergs "[a]ny *known* defects."  (Emphasis added.)  As the trial court noted, "the contested elements of each claim concern the state of [the Rancourts'] knowledge of these shortcomings."  To prove Counts 1 and 2, the Wuestenbergs needed to show that the Rancourts had knowledge of the falsity of their representations.  *See Francis v. Stinson*, 2000 ME 173, ¶¶ 38-39, 760 A.2d 209.  "It is primarily for the factfinder to judge the credibility of witnesses and to consider the weight and significance of any other evidence."  *Tonge v. Waterville Realty Corp.,* 448 A.2d 902, 905 (Me. 1982).  We therefore "give due

regard to the trier of fact's determinations on credibility, weight and significance of evidence." *Id.*

[¶12] Recounting Mr. Rancourt's twenty-two hours of testimony, the trial court observed, "To describe the examination of Mr. Rancourt as thorough would be understatement to the point of falsehood." The trial court found his testimony to be credible and reinforced by other evidence, observing that "Mr. Rancourt never directly admitted having spoken falsely or concealed evidence of flaws in the house." Further "bearing on the court's assessment of Mr. Rancourt's testimony [was] his stubborn, mistaken, insistence that he had built the house 'to Code.'" The trial court's explicit finding that the Rancourts "did not have the knowledge and understanding critical to each cause of action" is supported by competent evidence in the record.

B.      Count 3 (Fraud—Material Misrepresentation)

[¶13] The Wuestenbergs next argue that the court made erroneous factual findings as to whether the Rancourts understood what was meant by "blueprints" and whether they had knowledge of the location of the Gardner plans. Liability for material misrepresentation requires that a defendant have knowingly or recklessly made a false representation of a material fact. *See*

*Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979). The Wuestenbergs argue that the court made erroneous factual findings and erred in denying this claim.

[¶14] However, there was no error in the court's finding that the "Rancourts did not understand they were being asked at the time of the sale for the [Gardner] plans . . . or, if they did understand it, they did not know where those plans were." The trial court "conclude[d] the Rancourts were to be believed when they testified they looked for the Gardner Plans and could not find them." Even if, as the Wuestenbergs suggest, the evidence might support alternative findings of fact, the trial court's findings regarding the Gardner plans are well-supported by competent evidence in the record and not erroneous. *See Handrahan*, 2011 ME 15, ¶ 13, 12 A.3d 79.

C.    Count 4 (Negligent Misrepresentation) & Count 7 (Negligence)

[¶15] The Wuestenbergs, once again contending that the court made erroneous findings regarding the Rancourts' knowledge of the home's defects and risks, next argue that the court erred in denying their claims for negligence.[1] More specifically, the Wuestenbergs assert that the Rancourts had

---

[1] We have adopted section 552 (1) of the Restatement (Second) of Torts (1977) as the appropriate standard for negligent misrepresentation claims. *See Rand v. Bath Iron Works*, 2003 ME 122, ¶ 13, 832 A.2d 771. The standard is defined as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary

a duty, pursuant to 33 M.R.S. § 173(5) and the disclosure form, "to use reasonable care to inform themselves" and disclose known risks.[2]

[¶16]  The trial court did not reach the issue of whether there was a breachable duty in this case, because it determined that the Rancourts "did not possess the knowledge the Wuestenbergs blame[d] them for not providing, and they had no reason to know it in light of their uneventful interaction with inspecting authorities," including the "failure of . . . the building inspector . . . or of any other inspecting or licensing authority[] to call the Rancourts' work into question as the house was being built."  Once again, these findings are supported by competent record evidence.

---

loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id*. (quoting Restatement (Second) Torts § 552(1)) (emphasis omitted).  In applying this standard, "the fact-finder's primary task is to ascertain whether the defendant's conduct was reasonable."  *Id*.  The Rancourts assert that this cause of action is precluded by the economic loss doctrine.  *See Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc*., 659 A.2d 267, 270-71 & n.4 (Me. 1995).  We need not reach the issue because the trial court found that the Wuestenbergs' own negligence would have precluded any recovery because they "declined an opportunity for diligent evaluation, an opportunity which was explicitly recorded in their purchase and sale agreement and which they read and evaluated before signing."

[2]  As previously discussed, 33 M.R.S. § 173(5) (2018) required the Rancourts to disclose "[a]ny *known* defects."  (Emphasis added.)  The Rancourts posit that the statute must bar any negligent misrepresentation claim for defects that they allegedly "should have known" of.  We need not reach this issue either, because the trial court also found that the Rancourts had no reason to know of the defects.

D.	Count 11 (Breach of Contract—Purchase and Sale Agreement)

[¶17]	Finally, the Wuestenbergs argue that the trial court erred in denying their claim for breach of contract when it found that "the absence of mediation was not predicated on a refusal or any other conduct by [the Rancourts] that constituted a breach of contract."  To obtain relief for a breach of contract, the plaintiff must "demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages.  Similarly, the question of whether there has been a breach of contract is a question of fact."  *Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088 (quotation marks omitted).

[¶18]  The mediation clause stated in pertinent part that "[i]f a party does not agree first to go to mediation, then that party will be liable for the other party's legal fees in any subsequent litigation . . . in which the party who refused to go to mediation loses . . . ."  The trial court expressly found that "everyone acted in good faith and no one did anything wrong. . . . [T]he absence of mediation was not predicated on a refusal or any other conduct by [the Rancourts] that constituted a breach of contract."  This, too, is supported by competent evidence in the record.

### III. CONCLUSION

[¶19]  Contrary to the Wuestenbergs' arguments,[3] the court's explicit findings were comprehensive, detailed, and adequately supported by evidence in the record, including testimony and exhibits from the fifteen-day bench trial. As the trial court expressed, "[The] finding that there was no actionable misconduct by the Rancourts does not minimize the monetary and emotional cost of the dispute to the parties."  Nevertheless, the trial court's findings were supported by the record.  Accordingly, the court committed no error.  *See Handrahan*, 2011 ME 15, ¶ 13, 12 A.3d 79.

The entry is:

Judgment affirmed.

---

Timothy C. Woodcock, Esq. (orally), and David C. Pierson, Esq., Eaton Peabody, Bangor, for appellants Michael Wuestenberg and Rosemarie Wuestenberg

David A. Goldman, Esq. (orally), Norman, Hanson & Detroy, LLC, Portland, for appellees Harry J. Rancourt, III, and Stephanie J. Rancourt

Penobscot County Superior Court docket number CV-2014-129
FOR CLERK REFERENCE ONLY

---

[3]  We are unpersuaded by the Wuestenbergs' argument regarding the Maine Unfair Trade Practices Act (Count 9), *see* 5 M.R.S. §§ 205-A – 214 (2018), because the trial court found that the sale of the house was not related to the Rancourts' business.  The punitive damages claim (Count 10) fails because there was no underlying tort.  *See Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985) ("[P]unitive damages are available based upon tortious conduct only if the defendant acted with malice.").