MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 95
Docket:        Aro-19-435
Submitted
  On Briefs:   May 12, 2020
Decided:       July 2, 2020

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, and HORTON JJ.

# WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR MFRA TRUST 2014-2

v.

# LISA BERRY

HUMPHREY, J.

[¶1]  Wilmington Trust, National Association, as Trustee for MFRA Trust 2014-2 (Wilmington), appeals from a judgment entered by the District Court (Fort Kent, *Soucy, J.*) in favor of Lisa Berry following a bench trial on Wilmington's complaint for foreclosure.  Wilmington argues that the court erred by excluding evidence of business records showing Berry's payment history with various loan servicers, *see* M.R. Evid. 803(6), and in finding that Berry did not receive a properly served notice of default and mortgagor's right to cure, *see* 14 M.R.S. § 6111(3) (2018).[1]  Wilmington also argues that the

---

[1] As discussed below, *see infra* II.A.2, the language in 14 M.R.S. § 6111(3) (2018) has since been repealed and replaced, but this statutory amendment became effective after the events at issue here.  *See* P.L. 2019, ch. 361, §§ 1-2 (effective Sept. 19, 2019) (codified at 14 M.R.S. § 6111(2-A) (2020)).

2

court abused its discretion in awarding attorney fees to Berry. *See* 14 M.R.S. § 6101 (2020). We affirm the judgment.

## I. BACKGROUND

A. Foreclosure Complaint and Trial

[¶2]  On February 16, 2018, Wilmington filed a complaint for foreclosure, alleging that Berry was in default for failing to make payments since May 1, 2015, and that she owed $73,508.08.[2]

[¶3]  On March 20, 2019, the court held a one-day bench trial on Wilmington's complaint. At trial, Wilmington sought to admit in evidence business records purporting to show Berry's payment history with various loan servicers, including, in relevant part, Ditech Financial (formerly Green Tree Servicing) and Fay Servicing, LLC, the current servicer of Berry's loan. To support the admission of these records, Wilmington presented testimony from an employee who worked for these loan servicers and who was familiar with each entity's record keeping practices. However, Berry objected to the admission of the business records because the records also contained a

---

[2]  On September 21, 2005, Berry signed a promissory note in the amount of $55,700 for the purpose of purchasing a residential property in Van Buren and, to secure the note, executed and delivered a mortgage to Mortgage Electronic Registration Systems, Inc., as the nominee of the lender. In November 2013, Berry entered into a loan modification agreement, increasing the outstanding principal to $78,037.07. At trial, the court (*Soucy, J.*) admitted evidence demonstrating that Wilmington was the holder of the note and owner of the mortgage, and the parties do not dispute that evidence.

reference to a separate loan servicer, "Marix Servicing, LLC." Although the records indicated that Marix may have serviced Berry's loan in December 2016, an employee of Fay Servicing testified that he had no knowledge about Marix and did not recognize the name. The court admitted the records "de bene."

[¶4] Additionally, Wilmington attempted to prove that it had properly mailed to Berry a notice of default and right to cure. Wilmington presented testimony indicating that the notice had been mailed, and the court admitted in evidence a copy of the notice, which contained a "First-Class Mail" designation on the exhibit's cover page and a "Transaction Report" from LenderLive, LLC, indicating that a notice was mailed in January 2017. Berry testified that she had never received the notice and that there were three other individuals who also received mail at her address.

[¶5] Regarding the business records, the court sustained Berry's objection made at trial and concluded that, although the witness was "qualified . . . to lay the foundation necessary to admit the . . . loan payment history," the "unexplained reference" to Marix was "fatal to [Wilmington's] attempts to lay a proper foundation for the admission of [the records]." The court found that the reference to Marix "indicate[s] a lack of trustworthiness

4

of the records offered." Additionally, the court found that Wilmington had "failed to prove timely receipt of notice of the right to cure" and that Berry had presented a "credible reason explaining why she may not have received it." Because it excluded the evidence of the business records and found that Wilmington did not prove that it had properly served Berry with the notice of default and right to cure, the court entered judgment in favor of Berry on May 14, 2019.

B.    Post-Judgment Motions

[¶6] On May 28, 2019, Wilmington moved to amend the judgment. *See* M.R. Civ. P. 59(e). Wilmington argued that the reference to Marix in the records did "not indicate a lack of trustworthiness" and, in support, requested that the court take judicial notice of documents on the Securities and Exchange Commission's website.[3] Wilmington asserted that these documents demonstrated that Marix and the other loan servicers at issue were owned by the same parent corporation and "were effectively the same company." Wilmington further argued that the notice of default and right to cure had complied with the notice requirements of 14 M.R.S. § 6111 and that Berry's

---

[3] Wilmington provided a hyperlink to the Securities and Exchange Commission's (SEC) website, but it did not provide any physical documents to the trial court.

receipt of the notice "may be presumed from [the] mailing." Berry opposed the motion.

[¶7] On June 13, 2019, Berry filed a motion seeking an award of attorney fees because Wilmington "d[id] not prevail." 14 M.R.S. § 6101. Wilmington objected, arguing that an award of attorney fees was unwarranted because it did not act in "bad faith" during the proceedings.

[¶8] The court held a hearing on July 17, 2019, and, on September 27, 2019, entered orders on the two pending post-judgment motions. In one order, the court denied Wilmington's motion to amend, concluding that "the unexplained appearance of M[a]rix Servicing in [the business records] raises a host of doubts about the reliability of the documents." The court also declined to take judicial notice of the documents offered by Wilmington, reasoning that such notice "would not resolve the trustworthiness issues raised by" the reference to Marix in the records or "the failure of the witness . . . to even recognize the name [Marix]." In a separate order, the court granted Berry's motion for attorney fees, concluding that "from the plain language of the statute . . . [Berry] need not prove bad faith or extraordinary circumstances."[4] Wilmington timely appealed. *See* M.R. App. P. 2B(c)(2)(D).

---

[4] On October 15, 2019, the court entered an amended order on Berry's motion for attorney fees, in which the court made spelling and grammatical changes.

## II. DISCUSSION

A.    Evidentiary Issues

[¶9]   Wilmington's arguments address two of the eight elements of proof necessary to support a judgment of foreclosure: "the amount due on the mortgage note, including any reasonable attorney fees and court costs," and "evidence of [a] properly served notice of default and mortgagor's right to cure in compliance with statutory requirements." *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 (quotation marks omitted). We address each in turn.

1.    Business Records

[¶10]   Wilmington contends that the court erred in excluding evidence of business records demonstrating the amount due on Berry's note, arguing that it offered sufficient foundational testimony to admit the evidence pursuant to the business records exception to the hearsay rule. *See* M.R. Evid. 803(6). Wilmington further argues that any issues regarding the reference to Marix in the records pertained only to the weight—not the admissibility—of the evidence, and that the reference to Marix was not a necessary part of proving its case.

[¶11]   We review for clear error "[a] trial court's determination regarding whether the necessary factual foundation to admit evidence pursuant to the business records exception has, or has not, been established," *M & T Bank v. Plaisted*, 2018 ME 121, ¶ 19, 192 A.3d 601 (quotation marks omitted), and review the court's "ultimate determination of admissibility for an abuse of discretion," *Am. Express Bank FSB v. Deering*, 2016 ME 117, ¶ 12, 145 A.3d 551 (quotation marks omitted).

[¶12]   The purpose underlying the business records exception to the hearsay rule is "to allow the consideration of a business record, without requiring firsthand testimony regarding the recorded facts, by supplying a witness whose knowledge of business practices for production and retention of the record is sufficient to ensure the reliability and trustworthiness of the record." *Avis Rent A Car Sys., LLC v. Burrill*, 2018 ME 81, ¶ 28, 187 A.3d 583 (quotation marks omitted).  Maine Rule of Evidence 803(6) "dictates both (1) what foundation must be laid to admit such evidence as an exception to the rule excluding hearsay evidence, and (2) the type of witness required to lay that foundation." *Greenleaf*, 2014 ME 89, ¶ 25, 96 A.3d 700.  In order to lay the proper foundation, a party must provide, in relevant part, "the testimony

8

of the custodian or another qualified witness," M.R. Evid. 803(6)(D), to

establish that

> (A)   The record was made at or near the time by—or from
> information transmitted by—someone with knowledge;

> (B)  The record was kept in the course of a regularly conducted
> activity of a business, organization, occupation, or calling, whether
> or not for profit; [and]

> (C)  Making the record was a regular practice of that activity[.]

M.R. Evid. 803(6)(A)-(C); *see Greenleaf*, 2014 ME 89, ¶ 25, 96 A.3d 700.  The

opponent of the record may defeat the proponent's offer by demonstrating

that "the source of information or the method or circumstances of preparation

indicate a lack of trustworthiness."   M.R. Evid. 803(6)(E).[5]   "In evaluating

trustworthiness for purposes of Rule 803(6), courts consider factors such as

the existence of any motive or opportunity to create an inaccurate record, any

delays in preparation of the record, the nature of the recorded information,

the systematic checking, regularity and continuity in maintaining the records,

and the business's reliance on them."  *HSBC Mortg. Servs., Inc. v. Murphy*, 2011

ME 59, ¶ 11, 19 A.3d 815 (alterations omitted) (quotation marks omitted); *see*

*Plaisted*, 2018 ME 121, ¶ 26 n.8, 192 A.3d 601 (stating that a court "could have

---

[5]  *See* M.R. Evid. 803 Advisory Committee Note - August 2018 ("It is up to the opponent to show that the source of information or the method or circumstances of preparation of the record indicate a lack of trustworthiness.").

excluded [evidence] if the sources of information or other circumstances indicated a lack of trustworthiness even if it otherwise would have been admissible").

[¶13]   Here, the employee of Fay Servicing testified regarding his familiarity with the business records of the various loan servicers and was, as the court found, "qualified . . . to lay the foundation necessary to admit the screenshots of the loan payment history."   After Wilmington laid this foundation, however, Berry had the opportunity, and burden, to demonstrate that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."  M.R. Evid. 803(6)(E).  Berry pointed to the reference to Marix in the records, and the court then found that the Marix reference "indicate[d] a lack of trustworthiness of the records offered."  This finding was supported by both the reference to Marix in the records and the testimony of the Fay Servicing employee, who testified that he did not recognize the name and had no knowledge about Marix.

[¶14]   Because the court's finding that the business records were untrustworthy was supported by the evidence, the trial court did not clearly err or abuse its discretion when it excluded the business records.[6]

_____

[6] Although Wilmington has requested on appeal that we take judicial notice of the documents on the SEC's website, we decline to do so.  Further, to the extent that Wilmington challenges the trial

2.      Notice of Default and Right to Cure

[¶15]   Wilmington also argues that the court erred in finding that Wilmington failed to prove timely receipt of the notice of default and right to cure, asserting that the court gave "undue weight" to Berry's testimony.  We review a trial court's factual findings in a foreclosure action for clear error. *See JPMorgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, ¶ 12, 156 A.3d 727 (quotation marks omitted).  As the party with the burden of proof at trial, Wilmington "must establish on this appeal that contrary findings were compelled by the evidence." *Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 8, 226 A.3d 227.

[¶16]   One of the essential elements of proof necessary to support a judgment of foreclosure is "evidence of [a] properly served notice of default and mortgagor's right to cure in compliance with statutory requirements." *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 (quotation marks omitted).  "[A] mortgagee may not accelerate maturity of the unpaid balance of [an] obligation or otherwise enforce [a] mortgage because of a default unless and

court's ruling in which it declined to take judicial notice of facts in these same documents, we conclude that the court did not err or abuse its discretion.  *See* M.R. Evid. 201(b); *see also Bard v. Lord*, 2010 ME 48, ¶ 8, 997 A.2d 101 (stating the standard of review for rulings on admissibility of evidence).  Here, as the trial court correctly determined, even if it had taken judicial notice of the facts contained in the documents, these facts "would not resolve the trustworthiness issues raised" by the reference to Marix nor would they address "the failure of the witness . . . to even recognize the name [Marix]."

until a notice of default and right to cure has been provided to the mortgagor." *Bordetsky v. JAK Realty Trust*, 2017 ME 42, ¶ 6, 157 A.3d 233 (quotation marks omitted). The contents of the notice are governed by statute. *See* 14 M.R.S. § 6111(1-A) (2020).

[¶17] At the time of the events at issue here, section 6111 defined the procedures for ensuring that the notice was received by the mortgagor, stating that "[a] mortgagee shall provide notice to a mortgagor . . . by[] [c]ertified mail, return receipt requested . . . or [o]rdinary first-class mail, postage prepaid." 14 M.R.S. § 6111(3)(A)-(B) (2018).[7] Pursuant to section 6111(3), when providing notice by certified mail, "the time when the notice is given to the mortgagor . . . is the date the mortgagor . . . signs the receipt or, if the notice is undeliverable, the date the post office last attempts to deliver it." *Id.* § 6111(3)(A). Alternatively, when providing notice by ordinary first-class mail, "the time when the notice is given to the mortgagor . . . is the date when the mortgagor . . . *receives* that notice." *Id.* § 6111(3)(B) (emphasis added). If first-class mail is used, "[a] post office department certificate of mailing to the

---

[7] The language in 14 M.R.S. § 6111(3) (2018) has since been repealed and replaced, but the effective date of these changes occurred after the events at issue here. *See* P.L. 2019, ch. 361, §§ 1-2 (effective Sept. 19, 2019) (codified at 14 M.R.S. § 6111(2-A) (2020)). Title 14 M.R.S. § 6111(2-A) now requires that notice be sent to a mortgagor by *both* certified mail and ordinary first-class mail. *See id.*

mortgagor . . . is conclusive proof of receipt on the 3rd calendar day after mailing." *Id.*

[¶18]  Here, Wilmington presented testimonial evidence that the notice had been mailed and also entered in evidence a copy of both the notice of default and the "Transaction Report" from LenderLive, LLC, that purported to show that the notice had been mailed.  The copy of the notice showed that the mailing was designated as "First-Class Mail," with postage prepaid.  Although "the time when the notice is given to the mortgagor . . . is the date when the mortgagor . . . *receives* that notice," Wilmington did not provide a certificate of mailing that would have constituted "conclusive proof of receipt."  *Id.* (emphasis added); *see Ocean Communities Fed. Credit Union v. Roberge*, 2016 ME 118, ¶ 21, 144 A.3d 1178.  Without this "conclusive proof," the court found that Berry "denied receiving the notice and presented a credible reason explaining why she may not have received it."  This finding was supported by the record, including Berry's testimony that she never received the notice and that there were three other people who also received mail at the same address.  *See Allen v. Rae*, 2019 ME 53, ¶ 9, 206 A.3d 902 ("[B]ecause determinations of the weight and credibility of testimony and evidence are squarely in the province of the fact-finder, we will not second-guess the trial

court's credibility assessment of conflicting testimony." (quotation marks omitted)).

[¶19]  Because Wilmington did not provide "conclusive proof" of receipt and because the court's findings are supported by the record, the court did not clearly err in finding that Wilmington failed to prove that Berry received a copy of the notice of default and right to cure.  Wilmington has not demonstrated on appeal that a contrary finding was "compelled by the evidence." *Wuestenberg*, 2020 ME 25, ¶ 8, 226 A.3d 227.

B.    Attorney Fees

[¶20]  Finally, Wilmington argues that the court abused its discretion in awarding attorney fees to Berry, arguing that it did not file the foreclosure complaint in bad faith and that 14 M.R.S. § 6101 does not require the court to award fees to a mortgagor.  Berry counters that the court awarded her attorney fees because Wilmington did not prevail at trial, which is in accordance with the plain language of section 6101.

[¶21]  We review a court's award of attorney fees for an abuse of discretion, "mindful that the trial court is in the best position to observe the unique nature and tenor of the litigation as it relates to a request for attorney fees." *Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 12, 165 A.3d 357

(quotation marks omitted). When the "interpretation of a statute is required in conjunction with the award . . . [of attorney fees], we review the statutory construction de novo." *Kilroy v. Ne. Sunspaces, Inc.*, 2007 ME 119, ¶ 6, 930 A.2d 1060.

[¶22] A court's authority to award attorney fees may be based on "a specific statutory authorization." *Sebra v. Wentworth*, 2010 ME 21, ¶ 17, 990 A.2d 538. Section 6101 provides, in relevant part, that

> [i]f the mortgagee does not prevail, or upon evidence that the action was not brought in good faith, the court may order the mortgagee to pay the mortgagor's reasonable court costs and attorney's fees incurred in defending against the foreclosure or any proceeding within the foreclosure action and deny in full or in part the award of attorney's fees and costs to the mortgagee.

14 M.R.S. § 6101. The plain language of section 6101 demonstrates that the court may award attorney fees to the mortgagor "[i]f the mortgagee does not prevail, *or* upon evidence that the action was not brought in good faith." *Id.* (emphasis added). Although the court may also award attorney fees to a mortgagor "upon evidence that the action was not brought in good faith," the use of "or" in the statute indicates that the court was not required to determine *both* that the mortgagee did not prevail *and* that the action was brought in bad faith. *Id.; see Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 61, 39 A.3d 74 ("The use of the word 'or' establishes

two alternative criteria."). Here, it is clear that the court entered judgment in favor of Berry and, thus, she had "prevail[ed]" in the proceeding.[8] Accordingly, the trial court did not abuse its discretion in awarding attorney fees to Berry.

The entry is:

Judgment affirmed.

---

Andrew J. Schaefer, Esq., Bendett & McHugh, P.C., Portland, for appellant Wilmington Trust, National Association

Frank D'Alessandro, Esq., and Deborah Ibonwa, Esq., Maine Equal Justice, Augusta; Thomas A. Cox, Portland; and Eugene J. McLaughlin, Presque Isle, for appellee Lisa Berry

Fort Kent District Court docket number RE-2018-1
FOR CLERK REFERENCE ONLY

---

[8] When there is a dispute regarding which party has "prevailed" in a proceeding, we have required that the trial court "look at the lawsuit as a whole to determine, as a factual matter, whether [a party] prevailed." *Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 14, 165 A.3d 357 (citation omitted) (quotation marks omitted). Here, based on the judgment entered in Berry's favor, there can be no dispute that she is the prevailing party.