STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-20-547

PRECISION DOORS &               )
HARDWARE, d/b/a EXACTITUDE      )
HARDWARE CONSULTANTS            )
                                )
          Plaintiff,            )
                                )
v.                              )          ORDER ON PLAINTIFF'S
                                )          MOTION FOR SUMMARY
                                )          JUDGMENT
DIRIGO CAPITAL                  )
ADVISORS, LLC and               )
KEVIN MATTSON,                  )
                                )
          Defendants            )

I. Background

Precision Doors & Hardware d/b/a Exactitude Hardware Consultants ("Hardware

Consultants") moves for summary judgment against defendants Dirigo Capital Advisors, LLC

("Dirigo Capital") and Kevin Mattson for breach of contract and unjust enrichment. Plaintiff

filed its complaint on December 22, 2020. Plaintiff moved *ex parte* for an attachment and

attachment on trustee process in the amount of $98,440.90 against the real estate, goods, chattels,

and other property and credits of defendants, which the court granted in its December 29, 2020

Order. On February 18, 2021, defendants filed an answer. Plaintiffs moved for summary

judgment and submitted its Statement of Material Facts pursuant to Rule 56 of the Maine Rules

of Civil Procedure on May 14, 2021. Defendants responded and provided an Additional

Statement of Material Facts on May 28, 2021. Plaintiff submitted its reply on June 11, 2021.

The following facts are taken from the plaintiff's Statement of Material Facts and Defendant's

Additional Statement of Material Fact.

1

On January 22, 2018, Hardware Consultants entered into an agreement with Dirigo Capital to provide Dirigo Capital with doors and door hardware in connection with a renovations project at Run of the Mill Lofts. (Pl.'s S.M.F. ¶ 1.) On February 21, 2018, Dirigo Capital and Hardware Consultants agreed to establish a credit account for Dirigo Capital for payments of amounts due for products supplied by Hardware Consultants. (Pl.'s S.M.F. ¶ 2.) The one-page credit account application ("Credit Agreement") was signed by Mr. Mattson, whose title was listed as Partner, and stated,

> If approved, terms of payment are Net 30 days from the date of invoice. A service charge of 1 ½% per month will be charged on all amounts over 30 days. The undersigned agrees to personally and individually guarantee prompt payment for all charges made by or on behalf of the above described company and accepts personal liability for all such charges. Such personal liability shall be in addition to any rights which Exactitude might have against the above described company. The undersigned hereby binds himself unconditionally, along with the above described company, to payment of any and all debts, service charges and costs of collection, including reasonable attorneys' fees. The undersigned has fully read the conditions above and understands he/she is signing both on behalf of company and as an individual. It is also understood that signature is required for extension of credit.

(Pl.'s S.M.F. ¶ 3; McBride Aff. Ex. 2.) The Credit Agreement was accompanied by a one-page Terms and Conditions of Sale.[1] (Pl.'s S.M.F. ¶ 3; McBride Aff. Ex. 2.) Mr. Mattson states he did read, did not intend, and did not understand that he signed the Credit Agreement in his personal capacity. (Defs.' Addt'l S.M.F. ¶ 3.)

Dirigo Capital purchased and charged to the credit account various building supplies and materials from Hardware Consultants. (Pl.'s S.M.F. ¶ 4.) Hardware Consultants delivered the purchased building supplies and materials to Dirigo, and Dirigo did not reject them.[2] (Pl.'s

---

[1] The Terms and Conditions of Sale was not signed by Mr. Mattson.
[2] Defendants deny this statement, claiming that some delivered materials were incorrect, thereby causing delay and incurred damages. However, Defendants do not provide any citations to admissible evidence of any rejected building supplies or materials or damages caused therefrom.

S.M.F. ¶ 5.) Hardware Consultants issued invoices, payment applications, and requests for payment to Dirigo. (Pl.'s S.M.F. ¶ 6; McBride Aff. Ex. 3.)

In November, 2019, when no payments had been made on the account, Christi McBride, a regional collections manager with Hardware Consultants' parent company, discussed with Mr. Mattson the terms of a promissory note. (Pl.'s S.M.F. ¶¶ 6, 8.) During the conversations to negotiate a promissory note, Ms. McBride stated that Mr. Mattson had personally guaranteed the terms of the credit agreement. (Pl.'s S.M.F. ¶ 10.) Mr. Mattson executed the Promissory Note ("Promissory Note") on July 23, 2020. (Pl.'s S.M.F. ¶ 12.) Mr. Mattson's signature was witnessed and his printed name appears under his signature. (Pl.'s S.M.F. ¶ 12.) Mr. Mattson states he was threatened with litigation and that he relied upon false information, specifically that he had personally guaranteed the Credit Agreement obligation, to sign the Promissory Note. (Defs' Addt'l S.M.F. ¶ 6.) The Promissory Note was for an amount of $96,028.90 and assigned payment in installations of $2,000.00 due on the 10th day of each month, beginning in August, 2020. (Pl.'s S.M.F. ¶ 13.) Defendants made one payment of $2,000.00 in September of 2020, but no other payments were made on the Promissory Note. (Pl.'s S.M.F. ¶ 14.)

On October 21, 2020, Ms. McBride delivered written notice to Mr. Mattson that he had breached the terms of the Promissory Note. (Pl.'s S.M.F. ¶ 15.) In December, 2020, Hardware Consultants delivered letters demanding defendants pay all sums owed on the Promissory Note, an amount of $94,028.90. (Pl.'s S.M.F. ¶¶ 16, 18.) Defendants allege offsetting claims of at least $50,000.00 against Hardware Consultants for incorrect and noncompliant shipments which caused delay. (Defs.' Addt'l S.M.F. ¶¶ 1-2.) Hardware Consultants requested $15,743.2 in incurred and anticipated attorneys' fees and costs. (Pl.'s S.M.F. ¶ 19.) Defendants allege the

3

attorneys' fees sought are unreasonable because plaintiff's attorney pursued an "improper" default judgment. (Defs.' Addt'l S.M.F. 10.)

## II.     Standard of Review

The Maine Rules of Civil Procedure provide a moving party may be granted summary judgment when "there is no genuine issue as to any material fact" and the moving party "is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted).

The court considers the facts in the light most favorable to the non-moving party, and considers only portions of the record referred to and the facts set forth in the parties' statements of material facts. *Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations, ... shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). To controvert an opposing party's factual statement, a party must "respond by affidavits or as otherwise provided [by Rule 56], setting forth specific facts showing that there is a genuine issue for trial." M.R. Civ. P. 56(e). Conclusions of fact and law do not properly belong in an affidavit filed in support of a motion for summary judgment." *Town of Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985).

## III.     Discussion

### A. Credit Agreement

The parties do not dispute that Dirigo Capital and Hardware Consultants entered into a Credit Agreement on February 21, 2018. (Pl.'s S.M.F. ¶ 1.) Defendants argue that Mr. Mattson is not personally liable because he did not intend to guarantee the payment for Dirigo Capital,

4

both because he did not understand there was language "deep in the agreement" and because he did not read the language which Hardware Consultants claims makes him liable for Dirigo Capital's debts. (Def.s' Response to Pl.'s S.M.F. ¶ 2.) Hardware Consultants seeks a summary judgment that defendants breached the Credit Agreement and the Promissory Note. Hardware Consultants submitted record evidence of the Credit Agreement with Mr. Mattson's signature, evidence that a legally binding contracts exist. *See Sullivan v. Porter*, 2004 ME 134, ¶ 12, 8611 A.2d 625. As a matter of general contract law, parties to a contract are deemed to have read the contract and are bounds by its terms. *Francis v. Stinson*, 2000 ME 173, ¶ 42, 760 A.2d 209 (internal citation omitted). Defendants have not controverted that the Credit Agreement is legally binding, and because Mr. Mattson signed the Credit Agreement, Mr. Mattson he is bound by its terms.

If the Credit Agreement terms to which Mr. Mattson is bound as a matter of law are unambiguous, "it must be interpreted in accordance with those terms." *InfoBridge, LLC. v. Chimani, Inc.*, 2020 ME 41, ¶ 13, 228 A.3d 21. Here, the terms of the Credit Agreement unambiguously confer guarantee obligations upon Mr. Mattson in his personal capacity, in addition to his capacity as manager of Dirigo Capital. The Credit Agreement reads, "the undersigned agrees to **personally** and **individually** guarantee prompt payment for all charges made by or on behalf of the above described company and accepts **personal liability** for all such charges." (emphasis added).

Mr. Mattson claims this language was buried within the contract. However, the executed Credit Agreement is a one-page document with two paragraphs of text placed directly above the signature line.[3] *See Bangor Publishing Company v. Union Street Market and Gurschick*, 1998

---

[3] While the Terms & Conditions of Sale document is included with the Credit Agreement, it was not signed by Mr. Mattson and does not give weight to the amount of text in the Credit Agreement.

ME 37, ¶ 8, 706 A.2d 595 (holding a provision that sets forth clear and unambiguous language is not unfair or deceptive because it is in small text). The language is clear, and is incorporated onto one page of text. The court finds the contract unambiguously conferred personal liability upon Mr. Mattson for the debts of Dirigo Capital.

To succeed on its breach of contract claim for the Credit Agreement, Hardware Consultants must "demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 17, 226 A.3d 227 (internal citation omitted). Whether a breach of contract has occurred is a question of fact. *See id.* There is no dispute of material fact that defendants have not issued payment pursuant to the material terms of the Credit Agreement requiring such payment. Defendants admitted that a representative of Hardware Consultants' parent company attempted to collect the amounts due on the credit account for months. (Pl.'s S.M.F. ¶ 9.) The nonpayment led to the execution of a Promissory Note for the amount owed, discussed below. Hardware Consultants suffered damages from defendants' breach, which they claim amounts to $94,028.90 plus attorneys' fees. Hardware Consultants has satisfied every element of its breach of contract claim that defendants breached the Credit Agreement, and defendants have not submitted sufficient evidence that would require a fact-finder to choose between a competing version of the truth. *See MP Associates v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040.

B. Promissory Note

After months of nonpayment, Ms. McBride negotiated with Mr. Mattson to execute a Promissory Note for the amount owed to Hardware Consultants. (McBride Aff. Ex. 4.) Mr. Mattson executed the Promissory Note by signing his name, which was witnessed. (Pl.'s S.M.F. ¶ 12.) Mr. Mattson claims he was "pressured" into signing because Ms. McBride threatened a

lawsuit. (Defs.' Resp. S.M.F. ¶ 10.) Again, for Plaintiff to succeed on a breach of contract claim as to the Promissory note, plaintiff must show there is no dispute as to any material fact that a valid contract existed, the defendant breached a material term of the contract, and the breach caused the plaintiff to suffer damages. *Tobin v. Barter*, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088. Whether a valid contract exists and whether there has been a breach of contract are both questions of fact. *Id.*

Mr. Mattson again tries to controvert the validity of a contract he signed, but does not provide evidence that creates a dispute of material fact. Ms. McBride's information that Mr. Mattson was personally liable for amount owed on the Credit Agreement was not false information. Whether Mr. Mattson was pressured into signing is not a clear legal argument, but is analogous to a duress claim or an interference claim of intimidation which involves unlawful coercion or extortion. For a duress claim, a contract may be voided if one entered into the contract because of "wrongful acts or threats which subvert the will of the threatened party." *City of Portland v. Gemini Concerts, Inc.*, 481 A.2d 180, 183 (Me. 1984). The court has also found no intimidation in the context of tortious interference of contracts when a party threatens to lawfully protect its property rights, even if those rights are later proven invalid. *Rutland v. Mullen*, 2002 ME 98, ¶ 16, 798 A.2d 1104. Defendants did not advance these claims or defenses, but in its response plaintiff nonetheless argued against the analogous claim of duress, that pressuring or threatening a lawsuit does not amount to duress. *See* Restatement (Second) of Contracts, § 176, cmt. d ("threat[s] to commence civil process, even if improper, may not amount to duress").

Defendants do not controvert plaintiff's claim that Mr. Mattson agreed to be held liable, in his personal capacity, by signing the Promissory Note. *See, e.g., Hills v. Gardiner Savings Institution*, 309 A.2d 877, 881-82 (Me. 1973). Similarly, defendants do not controvert plaintiff's

7

claim that defendants breached the Promissory Note. Mr. Mattson is therefore liable for the full amount promised less the one $2,000.00 payment, a total amount of $94,028.90.

  C. Damages and Attorney Fees

  Finally, defendants argue the amount owed to plaintiff is not $94,028.90 because defendants have offsetting claims of at least $50,000.00. Defendants do not provide citations to record evidence of incorrect shipments or damaged goods, which they claimed caused the offsetting damages, nor that the amount of offsetting damages claimed can be shown with reasonable certainty. *See, e.g. John W. Goodwin, Inc. v. Fox*, 1999 ME 33, ¶¶ 17- 19, 752 A.2d 541. Instead, through Mr. Mattson's affidavit defendants assert legal and factual conclusions that they are entitled to an offset, which are not proper to controvert a statement of material fact. *Town of Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985). Therefore, the court finds no genuine dispute that defendants owes $94,028.90.

  Next, plaintiff claims $15,743.52 in costs and attorney fees, which defendants refute by claiming plaintiff's attorney pursued an "improper" default judgment. (Defs.' Addt'l S.M.F. 10.) The Promissory Note provides that if a party sues to enforce the Note, "the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding... from the non-prevailing party." (McBride Aff. Ex. 4 ¶ 8.) The court may adjust the amount of attorneys' fees "if the fee application does not reflect a good faith effort to exclude excessive, redundant, or unnecessary hours accruing fees; reduce fees for time spent on unsuccessful claims; or reduce fees based on the plaintiff's limited degree of success." *Bangs v. Town of Wells*, 2003 ME 129, ¶ 20, 834 A.2d 955, 961. Here, however, defendants have submitted no record evidence to support that plaintiff's attorneys' fees are unreasonable, nor have they shown that plaintiff's request includes time spent on an improper default judgment

8

motion. Plaintiff asserts the reasonableness of the fees claimed with citation to an affidavit explaining the basis of the costs and fees. Therefore, plaintiff is entitled to $15, 743.72 in costs and attorneys' fees associated with this matter.

IV.    Conclusion

The Court GRANTS Plaintiff's Motion for Summary Judgment with respect to plaintiff Hardware Consultants's Breach of Contract Claim and enters judgment against defendants Dirigo Capital and Mr. Mattson. The Court awards $94,028.90 in damages and $15,743.72 in costs and attorneys' fees to plaintiff.

Pursuant to M. R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated:    8/3/21

John O'Neil, Jr.
Justice, Superior Court

9