2010 ME 48

**Rebecca (Baxter) BARD**

v.

**Donald LORD.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 29, 2010.
Decided: May 27, 2010.

Toff Toffolon, Esq., Machias, ME, for Donald Lord.

Jeffrey W. Davidson, Esq., East Machias, ME, for Rebecca (Baxter) Bard.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1]   Donald Lord appeals from a judgment of the District Court (Machias, *Gunther, J.*) granting Rebecca (Baxter) Bard's motion to modify a parental rights and responsibilities order.  Lord contends that the court erred in using Department of Labor statistics in imputing income to him for the purpose of determining his child support obligation.  We discern no error in the court's methodology and affirm the judgment.

## I.   BACKGROUND

[¶ 2]   Rebecca Bard and Donald Lord are the parents of a seven-year-old son.  They were never married.  In November 2005, Bard filed a complaint to determine parental rights and responsibilities, including child support.  The Family Law Magistrate (*Langner, M.*) entered an order awarding shared parental rights and responsibilities but no child support.

[¶ 3]   In October 2007, Bard filed a motion to modify the order, requesting sole custody and child support.  Lord filed a counter-motion, requesting that he be awarded primary residence and granted authority to make medical decisions for the child.  The court (*Gunther, J.*) heard the motions and entered an order that left most of the original order intact, but deferred ruling on the child support issue pending the receipt of new child support affidavits.

[¶ 4]   On July 15, 2009, the court held a hearing on the child support issue.  Bard and Lord were the primary witnesses.  Their incomes, particularly Lord's, were

much in dispute. After the evidence closed, in listening to Bard's argument concerning how much income should be imputed to Lord, the court said: "I can look at the Bureau of Labor Standards, and probably will." Neither party objected, and Lord did not discuss the court's stated intention in his closing argument.

[¶ 5] On July 22 the court filed its written findings. Bard had testified at the hearing that she anticipated receiving her bachelor's degree in behavioral science within a few months and that the degree would qualify her to work at "social service agencies around the community." The court imputed after-graduation income to her of $24,030 based on 90% of the U.S. Bureau of Labor Statistics figure for "social and human services assistants" in her area.[1] The court reduced the table figure by 10% to account for the economic decline in general and the economic conditions in Washington County in particular.

[¶ 6] Lord testified at the hearing that he was currently employed in the insurance office that he co-owned with his mother. Despite his employment and ability to purchase and maintain significant assets, a child support affidavit that Lord swore to and filed the month before the hearing reported income of $10,000 in 2008, with the same amount expected for 2009. The court, with good reason, found his testimony concerning his income to be "very suspect," and imputed income to him of $40,194 from the Bureau's statistics for "insurance sales agents," applying the same 10% reduction that it did for Bard. The net result was a child support order requiring Lord to pay $106 per week until Bard graduated and $40 per week thereafter.

## II. DISCUSSION

[¶ 7] Lord contends only that the court erred in relying on Department of Labor statistics in imputing income to him. By statute, in arriving at a party's earning capacity "[t]he court may admit Department of Labor statistics into evidence for purposes of computing a parental support obligation." 19-A M.R.S. § 2004(1)(E) (2009); *Wrenn v. Lewis,* 2003 ME 29, ¶ 23 n. 4, 818 A.2d 1005, 1011 ("In arriving at [a party's] earning capacity, the court is not limited to the evidence offered by the parties, but may also consider Department of Labor statistics . . . ."). Additionally, a court may take judicial notice of facts that are "generally known within the territorial jurisdiction of the trial court," or that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." M.R. Evid. 201(b); *see Wrenn,* 2003 ME 29, ¶ 23 n. 4, 818 A.2d at 1011.

[¶ 8] Given the explicit statutory authority and a source whose accuracy cannot reasonably be questioned, the District Court's methodology in taking judicial notice of Department of Labor statistics to impute earning capacity to Lord reveals no error or abuse of discretion. *See State v. Berke,* 2010 ME 34, ¶ 10, 992 A.2d 1290, 1292 (stating that rulings on admissibility of evidence reviewed for clear error or abuse of discretion). Accordingly, we affirm the court's judgment.

The entry is:

Judgment affirmed.

---

1. The Maine Department of Labor's Bureau of Labor Standards utilizes statistics compiled by the U.S. Department of Labor's Bureau of Labor Statistics. For the table used by the court, see Bureau of Labor Statistics, May 2008 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates: Northeast Maine nonmetropolitan area (2009), http://www.bls.gov/oes/2008/may/oes_2300001.htm.