MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 146
Docket:        Yor-14-420
Submitted
  On Briefs:   July 23, 2015
Decided:       November 17, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.

JENNIE E. ARANOVITCH

v.

DAVID E. VERSEL

JABAR, J.

[¶1]  Jennie E. Aranovitch appeals from an order entered by the District Court (Biddeford, *Janelle, J.*) granting David E. Versel's motion to modify the parties' divorce judgment and awarding him primary residence of the parties' minor children.  Aranovitch challenges several of the court's findings and contends that the court's remaining findings are insufficient to support the ordered modification.  She also argues that the court erred by failing to apply the correct legal standard.  We reject these contentions, and affirm.

## I.  BACKGROUND

[¶2]  In December 2009, Aranovitch and Versel were divorced pursuant to a stipulated judgment that awarded Aranovitch primary residence of, and Versel specific rights of contact with, the parties' minor son and daughter.  The judgment

2

recited the parties' agreement that neither would "cohabit with and, thereby, expose the minor children to anyone who abuses . . . alcohol," nor "allow the children to be passengers in a vehicle driven by someone whose reflexes and/or judgment is compromised due to . . . alcohol consumption."

[¶3]  In December 2010, Versel moved to modify the divorce judgment, alleging that Aranovitch was cohabiting with Jacques Blais and thereby exposing the children to a person who abused alcohol.  The court (*Foster, J.*) held a hearing on the motion in August 2011, and took the matter under advisement.  The court's order on that motion contains the following findings of historical fact.

[¶4]  Aranovitch was in a relationship with Blais before the divorce was finalized, and Versel insisted on the judgment's language regarding the children's exposure to alcohol because he was concerned about Blais's drinking.  In 2010, Versel remarried and moved to Georgia.  Aranovitch and Blais began cohabiting and devised strategies to minimize the impact of Blais's drinking on the family.  Despite these strategies, Blais was charged with operating under the influence (OUI) in February 2010, and again in August 2010.  With regard to both charges, Aranovitch was convinced that Blais had not been intoxicated, and that his blood and breath tests were inaccurate.  In August 2010, Blais pleaded guilty to the February OUI charge and his license was suspended for a period of ninety days.

[¶5]  In the fall of 2010, Aranovitch arranged for the parties' daughter to attend daycare for part of the day.  She allowed the daughter to spend the remainder of the day at home with Blais, who had lost his job due to his OUI conviction.  On October 27, 2010, while his license suspension was in effect, Blais picked the daughter up from daycare and drove her home without Aranovitch's knowledge.  The daycare provider smelled alcohol on Blais's breath and the police were notified, resulting in a third OUI charge.  Blais pleaded guilty to that charge and served twenty-three days in jail.  When he learned about the daycare incident, Versel asked Aranovitch not to allow Blais to resume living with her and the children.  Aranovitch refused this request and permitted Blais to return to her home upon his release, explaining to Versel that Blais had been sober in jail and had enrolled in an outpatient program to maintain sobriety in her home.

[¶6]  The court also noted that, during the August 2011 hearing, Aranovitch insisted that she had not violated the terms of the judgment, explaining that Blais used but did not abuse alcohol, and that he did not drink around the children because he only drank outside.

[¶7]  In the resulting order entered in September 2011, the court stated that it was disturbed by Aranovitch's "focus on explaining away the problem," and concluded that it was "naiveté at best, and self-deception at worst, to believe that [Blais's] long-term, serious substance abuse ha[d] been resolved through a

4

short-term program." The court found that Aranovitch had not complied with the divorce judgment, and that she would not comply in the future without "tighter strictures." The court consequently amended the divorce judgment to specifically prohibit Blais from consuming alcohol, or being under the influence of alcohol in the residence or in the presence of the children,[1] and to prohibit Aranovitch from allowing unsupervised contact between the children and Blais. The court also increased Versel's summer visitation with the children.

[¶8] In the fall of 2013, Versel moved to modify the children's primary residence, requested a prohibition on the children's contact with Blais, and filed a motion for "an emergency interim hearing." Versel claimed that Blais drank regularly in Aranovitch's home, and suggested that Blais's intoxication had caused an injury to the parties' son. On October 31, 2013, a family law magistrate (*Cadwallader, M.*) began an interim hearing and, after the first day, entered an order prohibiting Aranovitch from allowing Blais to be at her residence.

[¶9] After the interim hearing was completed in December 2013, the magistrate entered an interim order, finding that although "[b]oth parents are capable of providing primary residential care for the children," she "continue[d] to have concerns about Mr. Blais." The magistrate found that the children had likely

---

[1] The record establishes no authority for the court to order Blais, who has never been a party to this action, to refrain from any particular activity.

been exposed to Blais's intoxication since the September 2011 order, and prohibited Aranovitch from allowing contact between the children and Blais.

[¶10]    The court (*Janelle, J.*) held a final hearing on Versel's motion to modify in August 2014, and in an order dated September 8, 2014, granted Versel the right to provide the children's primary residence, and prohibited Aranovitch from allowing any unsupervised contact between the children and Blais.   In response to a timely motion for findings by Aranovitch, the court issued the following findings, each of which is supported by evidence in the record.

> 2.  Plaintiff's husband and the children's step-father, Jacques Blais, is a lifelong profound alcoholic.
>
> 3.  [Aranovitch] admits that she's unable to detect when Mr. Blais is drinking.
>
> 4.  The evidence reveals that there have been multiple occasions when [Aranovitch] was out of the home when Mr. Blais, while intoxicated, was the sole adult on the scene responsible for the care of the parties' two children . . . .
>
> 5.  On September 2, 2011, the Court . . . issued an order prohibiting Mr. Blais from having unsupervised contact with [the children] and from drinking while with the children.  Mr. Blais frequently ignored the Court's order.
>
> 6.  The evidence reveals that Mr. Blais, while intoxicated, drove the children.  The evidence, while not fully conclusive, strongly suggests that on September 5, 2013 Mr. Blais, while intoxicated, caused an accident resulting in a serious injury to [the son's] leg that required medical assistance.

6

7. Mr. Blais presents a danger to the children due to his longstanding alcoholism and his pattern of violating Court orders.

8. [Aranovitch], generally a very good and loving parent, has demonstrated a lack of insight with respect to [Blais's] alcoholism and the risk that he poses to the children.

9. These facts, taken together, represent a substantial change of circumstances since the issuance of the prior order and form the basis for a change of primary residence.

10. Based on these and other facts, the Court ordered a change of primary residence finding that the transition, however difficult in the short term for the children, would serve their long-term best interest.

[¶11] Aranovitch timely appealed. *See* 14 M.R.S. § 1901 (2014).

## II. DISCUSSION

A.    Standard of Review

[¶12] In determining whether to modify a prior parental rights decree, a trial court engages in a two-step inquiry, first considering "whether there has occurred a change in circumstances that has a sufficiently substantial effect on the children's best interests to justify a modification of the prior order." *Jackson v. Macleod*, 2014 ME 110, ¶ 22, 100 A.3d 484. If the court determines that such a change has occurred, the court then considers how it should modify the parental rights arrangement in furtherance of the children's best interests. *Id.*

[¶13] We review an order on a post-divorce motion to modify parental rights "for clear error in the court's finding of the historical facts of change," and

for an abuse of discretion in the court's evaluation of whether any change has so substantially affected the children's best interests to warrant a modification of parental rights. *Philbrick v. Cummings*, 534 A.2d 1307, 1308 (Me. 1987). "[A] trial court has exceeded the bounds of its discretion when, in discretionary decision-making, the court . . . considers a factor prohibited by law," or otherwise acts "based on a mistaken view of the law." *Smith v. Rideout*, 2010 ME 69, ¶ 13, 1 A.3d 441. When a party moves for further findings pursuant to M.R. Civ. P. 52, we review the trial court's findings to determine whether "they are sufficient, as a matter of law, to support the result." *Sargent v. Braun*, 2006 ME 96, ¶ 5, 902 A.2d 839 (quotation marks omitted).

[¶14] Aranovitch argues that the court erred by considering events that preceded the order of September 2011 in finding the facts that constituted a substantial change of circumstances. She contends that the court's remaining findings are insufficient to support a determination that a substantial change in circumstances had occurred, and that the children's primary residence with Versel would further their best interests. She also argues that the court failed to consider the statutory best interest factors.[2]

---

[2] Aranovitch additionally argues that the court clearly erred in finding that the evidence suggests that Blais's intoxication played a role in the son's injury. Contrary to her contention, the court heard evidence that Blais drank every day before he entered treatment in December 2013, and it could reasonably have inferred from that evidence that Blais was drinking on the date of the son's injury.

8

B.    Change of Circumstances Findings

[¶15]  The focus of the substantial change in circumstances inquiry is on the extent to which there are changed circumstances that affect the children's best interests.  Levy, *Maine Family Law* § 6.6[2] at 6-64 (8th ed. 2013).  Generally, the substantial change inquiry is temporally limited to events following the most recent order governing the children's residential care.  *Id.*  However, if the court determines that a substantial change in circumstances has occurred since the most recent order, it may consider events before that order to provide context for evaluating subsequent events, if the pre-order events are relevant to the issue of what parental rights arrangement will further the children's best interests.  *See Fraser v. Boyer*, 1998 ME 253, ¶¶ 10-12, 722 A.2d 354.

[¶16]  Here, there were multiple parental rights decrees in place before the final hearing on Versel's motion to modify primary residence: (1) the stipulated divorce judgment awarding Aranovitch primary residence; (2) the September 2011 order prohibiting Aranovitch from allowing unsupervised contact between Blais and the children, and prohibiting Blais from consuming or being under the influence of alcohol in the residence or in the presence of the children; (3) the interim order of October 2013, prohibiting Aranovitch from allowing Blais to be at her residence; and (4) the interim order of December 2013, prohibiting Aranovitch from allowing contact between the children and Blais.

[¶17]   Because the interim orders of 2013 were entered as temporary placeholders in advance of the final hearing in 2014, the court's final analysis of any change should have concerned the events that occurred after the parental rights order of September 2011.  Consistent with this limitation, the court allowed only brief testimony about the events preceding September 2011, and repeatedly emphasized that it was "only looking at whether there's been a substantial change in circumstances since the entry of the last order and, if so, whether a change in custody is in the children's best interest."

[¶18]   To the extent that the court made findings about events that occurred before September 2011,[3] it did not err in doing so, as these findings provided context for the court's evaluation of events that occurred after September 2011. *See Fraser*, 1998 ME 253, ¶¶ 11-12, 722 A.2d 354.  Moreover, the court's findings are sufficient, as a matter of law, to support a determination that the circumstances of the children's residence with Aranovitch had changed significantly since the prior parental rights order.  The record demonstrates that Blais violated the order of September 2011 by continuing to drink in the garage, and that his condition worsened significantly in December 2013, when his drinking resulted in a medical crisis.  The record also supports the court's finding that Aranovitch failed to gain

---

[3]   The court's findings do not specify any dates for the events in question.  Instead, they refer generally to Blais's long-standing addiction and Aranovitch's entrenched refusal to protect the children from the effects of that addiction.

insight into Blais's drinking and its effect on the children's safety, despite the court's admonitions regarding Aranovitch's "naiveté" and "self-deception" in its order of September 2011. The court committed no error in determining that Aranovitch's demonstrated inability to objectively evaluate and respond to Blais's drinking after the September 2011 order constituted a change in circumstances that jeopardized the children's best interests.

C.    Best Interest Findings

[¶19]  In conducting the best interest analysis, the court must consider the statutory best interest factors, 19-A M.R.S. § 1653(3) (2014), and "must consider as primary the safety and well-being of the child," *Jackson*, 2014 ME 110, ¶ 21, 100 A.3d 484 (quotation marks omitted).  The court is not required to make detailed findings regarding every best interest factor, even when a party moves for further findings pursuant to M.R. Civ. P. 52, "so long as it is otherwise evident that the court has evaluated the evidence with the best interest factors in mind." *Nadeau v. Nadeau*, 2008 ME 147, ¶ 35, 957 A.2d 108.

[¶20]  Here, the court found that Blais's alcoholism "presents a danger to the children" and that Aranovitch, "generally a very good and loving parent, has demonstrated a lack of insight with respect to [Blais's] alcoholism and the risk that he poses to the children." The court further found that the children's transition to Versel's residence, "however difficult in the short term . . . would serve their

long-term best interest." The foregoing findings reflect an application of the relevant best interest factors and demonstrate that the court considered the desirability of maintaining the continuity of the children's current residence, but also considered the undesirability of the children's continued exposure to Blais. *See* 19-A M.R.S. § 1653(3)(B), (D), (G). These findings are supported by the record, and are sufficient to support the court's determination that the children's best interests would be served by changing their primary residence from Aranovitch's home to Versel's.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jocelyn A. Stachowske, Esq., Shaheen & Gordon, PA, Dover, New Hampshire, for appellant Jennie E. Aranovitch

Jeanette M. Durham, Esq., Fairfield & Associates, PA, Lyman, for appellee David E. Versel