MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2021 ME 60
Docket:          Yor-21-166
Submitted
  On Briefs:     October 20, 2021
Decided:         November 23, 2021

Panel:           STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

MICHELLE L. SEYMOUR

v.

JOSHUA J. SEYMOUR

CONNORS, J.

[¶1]  Joshua J. Seymour appeals from a judgment of the District Court (York, *Moskowitz, J.*) modifying the allocation of parental rights and responsibilities in his divorce judgment.  Joshua contends that the trial court abused its discretion in failing to take judicial notice of vaccine information available on the Centers for Disease Control and Prevention (CDC) website and that the court failed to prioritize the children's safety or provide an explanation when it changed the contact schedule and allocated final decision-making authority on educational and medical matters to Michelle L. Seymour.  We agree that the court abused its discretion in declining to take judicial notice and that the court failed to adequately explain its modifications to the contact schedule

and the allocation of decision-making authority. Accordingly, we vacate the judgment in part and remand for further findings.

## I. BACKGROUND

[¶2] Joshua and Michelle were divorced in 2018 by a judgment of the District Court (York, *Cadwallader, M.*). The judgment ordered shared parental rights and responsibilities concerning their children, born in 2014 and 2017, with the children's primary residence with Michelle, and incorporated a settlement agreement providing that Joshua would have contact with the children for part of the day several days per week.

[¶3] In April 2020, Joshua moved to modify the divorce judgment, alleging that a change in circumstances had occurred because, inter alia, Michelle objected to having the children vaccinated, had not arranged for either child to see a pediatrician or dentist, and objected to the parties' son seeing an occupational therapist. Joshua asked the court to award him primary residence and modify the division of parental rights and the contact schedule. After subsequent litigation,[1] the court (Springvale, *Cadwallader, M.*) entered an

---

[1] In April 2020, Michelle instituted an action for protection from abuse, alleging that Joshua had sexually abused their three-year-old daughter. After a hearing, the District Court (York, *Moskowitz, J.*) denied the request for an order for protection on the ground that there was insufficient evidence of abuse. In the same month, Michelle filed a motion for contempt. On April 30, 2020, Joshua filed a complaint for protection from harassment, alleging that Michelle had stalked him and had been repeatedly removed from his property by police. He also alleged that Michelle had interrupted a medical examination of their daughter that was ordered by the Department of Health and Human

interim order changing the contact schedule to give Joshua contact with the children from Sunday to Wednesday each week.

[¶4] In March 2021, the court (Springvale, *Moskowitz, J.*)[2] held an evidentiary hearing on Joshua's motion to modify.[3] One issue at the hearing was the dispute between the parents whether to vaccinate their children for childhood diseases, such as polio and measles.[4] As of the date of the hearing, and against the advice of the children's pediatrician, Michelle had not vaccinated the children, testifying that she believed that the vaccines were not needed and were unsafe. When pressed—though the court found her testimony "evasive"—Michelle said that she would have the children vaccinated if it were a requirement for them to attend school, although she also expressed a desire to homeschool the children.

---

Services. The District Court (York, *Moskowitz, J.*) entered an order, agreed to by the parties, that restricted contact between Michelle and Joshua to issues regarding the children and prohibited Michelle from going onto Joshua's property.

[2] The docket sheet erroneously states that this hearing was held before Judge Daniel Driscoll.

[3] The hearing was also scheduled to address two other motions filed by Michelle, but she withdrew those motions during the hearing.

[4] The vaccines at issue are those recommended by the CDC for young children and mandated by state law and regulation for attendance in public school. *See* 20-A M.R.S. § 6359 (2021); 10-144 C.M.R. ch. 261 (effective Sept. 25, 2021).

[¶5] Joshua, who testified that he supported vaccination, asked the court to take judicial notice of pages on the CDC website containing information about childhood vaccination. In support of his request, Joshua provided printouts of the information, including the CDC's recommended vaccine schedule, information about how different vaccines strengthen the immune system, and safety information addressing common concerns about vaccines. The trial court declined to take judicial notice without providing a reason, but seemingly did so solely because of Michelle's opposition.

[¶6] The court issued its written ruling five days later. The court maintained the children's primary residence with Michelle because she had been their primary caregiver and it would not be in their best interests to change their residence. The court noted that "neither of the parties presented very believable testimony" because Michelle was nonresponsive and evasive and because Joshua testified that he and Michelle had never wanted their children to be exposed to parental conflict—an assertion that the court found "astounding." The court further found that "the parties have both created issues at child exchanges that have had a negative impact on the children"; that "[t]ransitions for the children need to be reduced"; that Michelle had disparaged Joshua to the children; and that "the parties have failed to agree on

important decisions to be made about the children," including "medical and dental decisions." The court summed up its findings by noting that "the evidence clearly demonstrates that this case boils down to one very sad and unfortunate fact: both of the parties are still treating each other abysmally which is harming the children."

[¶7] The court then allocated final, binding decision-making on educational and medical matters to Michelle. The court also changed the contact schedule to reduce Joshua's contact to three weekends per month.

[¶8] Joshua timely filed a motion for reconsideration and for further findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b) and M.R. Civ. P. 59. The court denied the motion without discussion. Joshua timely appeals. *See* M.R. App. P. 2B(c)(1)-(2); 14 M.R.S. § 1901 (2021).

## II. DISCUSSION[5]

### A. The trial court abused its discretion in declining to take judicial notice of the CDC vaccine information.

[¶9] Joshua argues that the court erred by declining to take judicial notice of the childhood vaccine safety information and recommendations

---

[5] In addition to the arguments discussed herein, Joshua asserts that the trial court deprived him of the fundamental liberty to direct the care, custody, and control of his children. A court's allocation of rights between two fit parents "involves no state intrusion on the parties' right to parent," *Mills v. Fleming*, 2017 ME 144, ¶¶ 7-8, 166 A.3d 1012; *see Klein v. Klein*, 2019 ME 85, ¶ 8 n.2, 208 A.3d 802, at least as long as the allocation of rights does not impinge on one parent's religious views, *see Osier*

6

available on the CDC website.  Although we review a trial court's ultimate decision whether to take judicial notice of a fact for abuse of discretion, we review legal errors underlying that decision de novo.  *See Wilmington Tr., N.A. v. Berry*, 2020 ME 95, ¶ 14 n.6, 237 A.3d 167; *Bard v. Lord*, 2010 ME 48, ¶ 8, 997 A.2d 101; *see also Haskell v. Haskell*, 2017 ME 91, ¶ 12, 160 A.3d 1176 (explaining that review for abuse of discretion involves resolving whether the trial court understood the law applicable to its exercise of discretion).

[¶10]  When a court takes judicial notice of information available on a website, it may do so for either of two purposes: solely to take notice that the information appears on the website or for the truth of the matter asserted on the website.  *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence Manual*, § 4.03[3] (Matthew Bender 2021) ("The cases taking judicial notice of information on websites may take notice for the truth of the matter asserted or may take notice only of the fact that the material appears on the website.").  We

---

*v. Osier*, 410 A.2d 1027, 1031 (Me. 1980).  Given that the religious beliefs of Joshua and Michelle are not factors in this appeal, we are unpersuaded by his argument and do not discuss it further.

Additionally, although Joshua's brief asks that the decision be "reversed," he primarily contests, consistent with his post-judgment arguments and proposed findings of fact, the modified contact schedule and allocation of final medical and educational decision-making.  He does not appear to challenge the determination to maintain primary residence of the children with Michelle.  If he did so wish to contest this aspect of the ruling, he has failed to develop that argument, *see Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290, and, in any event, the court's findings on this issue are sufficient to sustain its decision.

analyze separately whether the trial court erred or abused its discretion in not taking judicial notice for each of these purposes.

    **1.    The trial court abused its discretion in declining to take judicial notice that the information proffered appeared on the CDC website and represented the agency's position.**

[¶11]  M.R. Evid. 201(b) authorizes a court to take judicial notice of adjudicative facts "not subject to reasonable dispute."  An adjudicative fact is a fact relevant to the particular proceeding.  *See* Fed. R. Evid. 201 advisory committee's note ("[A]djudicative facts . . . [are] those which relate to the parties." (quotation marks omitted)); *see also Vallot v. Cent. Gulf Lines, Inc.*, 641 F.2d 347, 351 (5th Cir. Unit A Apr. 1981) (concluding that a court may refuse to take judicial notice of irrelevant facts).  If a party requests that the court take judicial notice of an adjudicative fact that is not reasonably subject to dispute, the court must take judicial notice if the party has supplied the necessary information.  *See* M.R. Evid. 201(c)(2).

[¶12]  Courts routinely take judicial notice of information on official government websites, *see, e.g.*, *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 & n.5 (1st Cir. 2010); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *Bard*, 2010 ME 48, ¶¶ 7-8, 997 A.2d 101.  Given the mandatory language of M.R. Evid. 201(c)(2), it is an abuse of discretion not to take judicial notice if the

fact is appropriate for judicial notice and the proponent provides the proper information. *See Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1075 (9th Cir. 2010) (concluding that it was error not to take judicial notice of a Bureau of Indian Affairs opinion); *Denius*, 330 F.3d at 926 (concluding that it was error not to take judicial notice of facts confirmable on the National Personnel Records Center website).

[¶13] The safety and efficacy of vaccines for the children was a central issue in the proceeding, and Joshua provided the trial court with the website and specific printouts of the information available from the CDC. Therefore, the trial court was required—at a minimum—to take judicial notice that the vaccine schedule and safety information was on the CDC's website and represented that agency's position. *See* M.R. Evid. 201(c)(2); *see also Lyon*, 626 F.3d at 1075; *Denius*, 330 F.3d at 926. Indeed, in her appellate brief, Michelle appears to concede that it is public knowledge that the information proffered by Joshua reflects the CDC's position, noting that the trial judge "no doubt, not living underneath a rock, knew what the CDC web-based documentation provided, promoted, and promulgated."

[¶14] We cannot say that the court's refusal to take judicial notice was harmless, as Michelle contends. As discussed below, a parent's adherence to

medical advice is relevant to the determination as to appropriate allocation of medical and educational decision-making. Michelle testified about the difficulty she had finding a pediatrician because of her position on vaccines and that she was not following the advice of the pediatrician she had found by refusing to vaccinate the children. The CDC documentation provides further evidence as to her failure to accept the advice of established sources of medical information, which is material to whether it is appropriate to allocate final decision-making authority to her.

    **2.**    **Whether the CDC evidence should be accepted for the factual accuracy of the CDC's position depends on whether it is generally accepted within the scientific community.**

[¶15]    Courts frequently take judicial notice of information on government websites, including the CDC's website, for its truth, *see, e.g.*, Weinstein & Berger, *Weinstein's Evidence Manual*, § 4.03[3]; *Gent*, 611 F.3d at 84 & n.5 (taking judicial notice of information from the CDC about Lyme Disease); *Holifield v. Unum Life Ins. Co. of Am.*, 640 F. Supp. 2d 1224, 1234-35 nn.8-19 (C.D. Cal. 2009) (taking judicial notice of information from the CDC about chronic fatigue syndrome). Michelle argues, however, that it would be improper to do so in this case because of the "heated debate concerning locally and nationally mandated immunization policies" and because "[m]illions and

millions of Americans take the position that their children should not be

subjected to such forced governmentally dictated medical treatment."

[¶16] Facts subject to judicial notice fall into two categories:

common-knowledge facts and scientific facts. *See* O'Neil, J., *A Practical Guide to*

*Evidence in Maine* § 2.3.1(g) at 2-7 (Bryant & Nivison, eds., 1st ed. 2015

& Supp. 2020) ("Judicially noticed facts are generally divided into two types. . . .

The first category of facts includes those matters that can be established with

the general knowledge of those persons who live in the jurisdiction of the trial

court. The second category of facts that can be judicially noticed includes things

that are referred to as mathematical or scientific facts or almanac-type facts.");

*see also* M.R. Evid. 201(b) ("The court may judicially notice a fact that is not

subject to reasonable dispute because it (1) [i]s generally known within the

trial court's territorial jurisdiction; or (2) [c]an be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned.").

[¶17] For some matters of common knowledge, the proper inquiry may

be whether the fact is accepted by the general public.[6] *See Pub. Utils. Comm'n v.*

*Cole's Express*, 153 Me. 487, 493-94, 138 A.2d 466, 469-70 (1958) ("Those

---

[6] Even then, however, that fact need not be universally accepted to be a proper subject of judicial notice. *See Pub. Utils. Comm'n v. Cole's Express*, 153 Me. 487, 493-94, 138 A.2d 466, 469 (1958).

matters familiarly known to the majority of mankind or to those persons familiar with the particular matter in question are properly within the concept of judicial notice." (quotation marks omitted)); *see, e.g., State v. Rines*, 269 A.2d 9, 14 (Me. 1970) ("It is a matter of judicial notice that the consumer public daily accepts as true and relies upon the assertions in labels and brands appearing on packages displayed at the supermarket.").

[¶18]  The information that Joshua wanted the trial court to judicially notice relates to the second category: scientific fact.  When a court is asked to take judicial notice of a scientific fact, the relevant inquiry is whether that fact has been generally accepted *by the scientific community*—not whether it is universally accepted by the public at large.  *See State v. Williams*, 388 A.2d 500, 503 (Me. 1978) ("General scientific acceptance is a proper condition for taking judicial notice of scientific facts . . . ." (quotation marks and emphasis omitted)); *see also State v. Fleming*, 1997 ME 158, ¶¶ 11-12, 11 n.7, 698 A.2d 503 (taking judicial notice of the reliability of restriction fragment length polymorphism DNA testing and discussing other cases in which judicial notice of scientific conclusions was taken).

[¶19]  As the record stands, the only evidence relating to general acceptance in the scientific community is the evidence offered by Michelle as to

the position of the pediatricians she consulted, and, on remand, the position of the CDC coinciding with the advice of those doctors, *see supra* ¶¶ 13-14.  On remand, if Michelle seeks to contest the CDC's position as a matter of scientific fact, she must show that its position is not accepted to be true within the scientific community.  Information available from other scientific sources, such as the Maine Centers for Disease Control, the Food and Drug Administration, the National Institutes of Health, the World Health Organization, the American Academy of Pediatrics, and the American Medical Association could be relevant on this question.  *See In re K. Y-B.*, 215 A.3d 471, 485-90 (Md. Ct. Spec. App. 2019) (discussing various medical authorities when ordering vaccination of a child notwithstanding a parent's opposition).[7]

**B.    On remand, the trial court should provide adequate findings and explanation to support modification of the contact schedule and its allocation of final medical and educational decision-making.**

[¶20]  Because the court erroneously excluded evidence material to the allocation of parental rights and responsibilities, we must remand for a new assessment taking into account that erroneously excluded information.  In that reassessment, the court should provide specific findings of fact and an

---

[7] Private websites that do not reflect any official or widespread scientific consensus would not be relevant.  *See U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 973 (W.D. Mich. 2003).

explanation for its determination as to the allocation of final decision-making and adjustment of the contact schedule, applying the relevant standards for determining the best interests of the children.

[¶21] When a court establishes parental rights and responsibilities, it may provide for shared parental rights, sole parental rights, or allocated parental rights. *See* 19-A M.R.S. §§ 1501, 1653 (2021). Allocated parental rights mean that various aspects of a child's welfare are divided between the parents, giving each parent control over particular issues. *See* 19-A M.R.S. §§ 1501(1), 1653(3)(S); *see also* Levy, *Maine Family Law* § 6.1 at 6-3 to 6-4 (8th ed. 2013). Thus, the court can divide decision-making authority on different issues, such as educational and medical matters, between the parents. *See* Levy, *Maine Family Law* § 6.1 at 6-3 to 6-4; Pittman & Thompson, *A Practical Guide to Divorce in Maine* § 8.4 at 8-4 (Whiting, ed., 1st ed. 2016 & Supp. 2020); *see also Hinkley v. Hinkley*, 2000 ME 64, ¶ 9, 749 A.2d 752; *Rodrigue v. Brewer*, 667 A.2d 605, 606-07 (Me. 1995). When a court makes such an allocation, the ultimate touchstone must remain the health and well-being of the child, *see* 19-A M.R.S. § 1653(3), and the court cannot prefer a parent because of the parent's gender, *see* 19-A M.R.S. § 1653(4); *Jacobs v. Jacobs*, 507 A.2d 596, 599 (Me. 1986).

[¶22] Subsequent modifications to parental rights and responsibilities, including a new allocation of rights, must be based on a substantial change in circumstances, *see Aranovitch v. Versel*, 2015 ME 146, ¶ 12, 127 A.3d 542, and be in the best interests of the children, *see id.*; *Smith v. Padolko*, 2008 ME 56, ¶ 11, 955 A.2d 740. We review judgments on motions to modify parental rights for clear error as to the court's finding of changed circumstances and for abuse of discretion as to the final decision on whether to modify. *See Aranovitch*, 2015 ME 146, ¶ 13, 127 A.3d 542.

[¶23] When a party files a motion under M.R. Civ. P. 52(b), "the trial court must ensure that the judgment is supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision." *Ehret v. Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101. If the court's judgment does not include sufficient findings to support the result, the judgment must be vacated and the matter remanded for further findings. *See Douglas v. Douglas*, 2012 ME 67, ¶ 27, 43 A.3d 965.

[¶24] In this case, Joshua moved to modify the existing award of shared parental rights based on an alleged change in circumstances. The court ultimately modified parental rights and responsibilities by allocating final

decision-making authority on medical and educational matters to Michelle and by changing the contact schedule. After this decision, Joshua filed a Rule 52(b) motion, which was summarily denied.[8]

[¶25] The trial court did not expressly find that there was a substantial change in circumstances justifying modification of parental rights, though such a finding is implicit because the court did order a modification. Joshua's Rule 52(b) motion, however, did not request further findings on this issue, so we infer that the court made the necessary factual inferences, and the court need not revisit this issue on remand. *See Sullivan v Tardiff*, 2015 ME 121, ¶ 15, 124 A.3d 652.

[¶26] In contrast, Joshua's motion did request further findings on the allocation of decision-making and the changes to the contact schedule. Thus, the trial court was required to ensure that its decision included express factual findings sufficient to inform the parties and us of the basis for the decision. *See Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101.

[¶27] Although the existing record supports the trial court's finding that shared decision-making was not feasible because of the parties' disagreements,

---

[8] It should be noted that there is no statement of facts in Michelle's appellate brief. Though a statement of facts is not required in an appellee's brief, its absence indicates that Michelle is satisfied with the facts provided in Joshua's brief. *See* M.R. App. P. 7A(b).

the trial court failed to explain why it allocated final decision-making authority on all educational and medical issues to Michelle. Indeed, the trial court's judgment completely fails to address the parties' disputes about vaccination and Joshua's allegations that Michelle had failed to bring the children to a pediatrician or dentist. In light of Joshua's Rule 52(b) motion, the trial court's failure to adequately explain why it chose to curtail Joshua's rights and expand Michelle's was error. *See Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101.

[¶28] In revisiting this question on remand, the court should be sensitive to its available options. For example, a court may allocate a subset of decision-making to one parent. Hence, while general medical decisions might be allocated to one parent, decision-making over immunizations could be allocated to the other parent. *See* 19-A M.R.S. § 1501(1); *Osier v. Osier*, 410 A.2d 1027, 1031 (Me. 1980); *see also* Levy, *Maine Family Law* § 6.3[3] at 6-28. Alternatively, a parent's refusal to follow medical advice on one issue could factor into whether it is in the best interests of the children to allocate overall medical decision-making to that parent. *See Bulkley v. Bulkley*, 2013 ME 101, ¶ 17, 82 A.3d 116; *see also In re Z.S.*, 2015 ME 110, ¶¶ 3, 6, 121 A.3d 1286 ("[T]he court found that the mother refused all efforts to vaccinate the child based on her refusal to accept scientific facts . . . . As a result

of these findings, the court concluded that the child had been deprived of necessary health care."); *see also In re E.A.*, 2015 ME 37, ¶ 9 n.1, 114 A.3d 207 ("The parents' initial refusal to vaccinate the twins further confirms their current lack of insight."). Given the evidence in the record that it is important that the children attend public school, failing to follow medical advice as to mandated vaccines could also affect educational and socialization opportunities and thus which parent should be allocated final decision-making.

[¶29] Also potentially relevant is whether Michelle has listened to medical advice and vaccinated the children since the date of the evidentiary hearing or has caused disruptions in their education because of any refusal or reluctance to do so.[9]

[¶30] The decision similarly fails to provide an adequate explanation for reducing Joshua's contact with the children. The record supports the trial court's finding that transitions are difficult for the children and should be minimized. The court, however, fails to explain why difficulties attributable to

---

[9] In her brief, Michelle asserts that she has started to vaccinate the children and argues that this moots Joshua's appeal. There is no record evidence before us, however, as to whether the children have actually been vaccinated, so we cannot consider it on appeal. *See McMahon v. McMahon*, 2019 ME 11, ¶ 14, 200 A.3d 789. Also, even if the children have been vaccinated, it would not render this appeal moot. The fact that the children have received some vaccines outside the dates recommended by the CDC would not in itself answer the question whether it is in the best interests of the children to give Michelle final medical and educational decision-making authority.

18

both parties justify reducing *Joshua's* contact with the children to three weekends per month—a substantial change from the previous schedule set by the court.[10] As with the decision-making issue discussed above, it is not enough for the trial court to find that modification is necessary—the trial court must explain the basis for the modification it makes. *See Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101.

### III. CONCLUSION[11]

[¶31] We affirm the judgment of the trial court to the extent that it orders that primary residence of the children remain with Michelle and finds that a change of circumstances justifies modification of the original divorce judgment. In all other respects, the judgment is vacated and the case is remanded to the

---

[10] Indeed, the arrangement in effect at the time of the hearing—which permitted Joshua to have contact with the children three days per week—was itself a modification from the initial contact schedule that was intended, in part, to address the problem of difficult transitions for the children. That interim schedule reduced transitions to two per week. Scheduling transitions so that they occur at school or day care might help to limit contact between the parents.

[11] We feel obligated to address the unprofessional nature of the brief filed by Michelle's attorney. Besides engaging in selective editing of the guardian ad litem's report, the brief does not reflect the standards of civility that we expect because it is filled with intemperate language and unsupported allegations. For example, Michelle's brief refers to parts of Joshua's brief as "arrogant[]" and "egocentric, self-serving, and nonsensical"; calls Joshua's argument about the best interests of the children "slanderous" and "false and defaming"; and makes an unsupported allegation that Joshua's attorney became "incensed" when the trial court did not take judicial notice of the CDC's "proclamations." This type of uncivil language is never acceptable, *see Key Equip. Fin., Inc. v. Hawkins*, 2009 ME 117, ¶¶ 22-23, 985 A.2d 1139, but is particularly harmful here because the parties already have a long history of strife. Attorneys should seek to reduce heated rhetoric between parties in litigation, not fan the flames of conflict.

trial court. On remand, the position taken by the CDC as reflected on its website shall be accepted as evidence of the CDC's position. If the parties contest whether that position should be accepted as scientific fact, the trial court will need to determine whether the CDC's position is generally accepted as fact within the scientific community, a question that itself may be amenable to resolution through judicial notice, either at the request of a party or on the court's own motion. Based on the existing record as supplemented by the evidence admitted on remand, the trial court must then make specific findings of fact and explain the basis for its decision as to the proper allocation of decision-making between the parties and an appropriate contact schedule for Joshua.

The entry is:

> Judgment affirmed as to the order that primary residence of the children remain with Michelle and the finding that a substantial change in circumstances justifies modification of the divorce judgment. In all other aspects, the judgment is vacated and the case is remanded to the District Court for further proceedings consistent with this opinion.

Thomas G. Van Houten, Esq., Springvale, for appellant Joshua J. Seymour

Timothy C. Coughlin, Esq, Coughlin Law Offices, LLC, Newmarket, New Hampshire, for appellee Michelle L. Seymour

Springvale District Court docket number FM-2018-328
FOR CLERK REFERENCE ONLY