MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2025 ME 97
Docket:       Cum-24-530
Argued:       September 9, 2025
Decided:      December 18, 2025

Panel:        STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

DANIEL CARDONA

CONNORS, J.

[¶1]  Daniel Cardona appeals from a judgment of conviction for unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(F) (2025), entered by the trial court (Cumberland County, *Cashman, J.*) after a jury trial.  On appeal, Cardona challenges (A) the admission of testimony regarding his subsequent sexual behavior directed toward the victim and (B) the exclusion of testimony regarding threats that Cardona made toward the victim's cousin, which Cardona sought to introduce as evidence of the victim's motive to fabricate the allegations.  We affirm the judgment.

## I. BACKGROUND

[¶2]  "Viewing the evidence admitted at trial in the light most favorable to the State, the jury could rationally have found the following facts beyond a

2

reasonable doubt." *State v. Athayde*, 2022 ME 41, ¶ 2, 277 A.3d 387.

[¶3]  Cardona is the victim's great-uncle.  One night in October 2020, the victim slept over at Cardona's house.  The victim awoke the next morning to Cardona inserting his finger into her vagina.  At that time, the victim was twelve years old and Cardona was in his fifties.

[¶4]  On October 19, 2021, the victim disclosed Cardona's sexual assault to her mother.  The victim did so after a phone call in which the victim's family encouraged her to come forward if she had been sexually assaulted.  The family was concerned that the victim had been sexually assaulted because Cardona had accused the victim's cousin of sexually assaulting the victim.[1]

[¶5]  That same day, the victim and her mother reported the offense to a police officer.  One week later, on October 26, 2021, the victim disclosed the offense to a forensic interviewer in a recorded interview at the Child Advocacy Center (CAC).

[¶6]  On June 8, 2022, the State charged Cardona by indictment with unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(F).  A jury trial occurred over four days in July 2024.

---

[1]  The victim denied that her cousin had assaulted her.

## A.    Admission of Late-Disclosed Evidence

[¶7]  On the first day of trial, the State presented a new witness list that included, for the first time, the victim's brother's ex-girlfriend, H.F.  Cardona had named H.F. on his witness list but had not intended to call her at trial.  Three days before trial began, however, the victim told the State for the first time of a separate incident that occurred after the sexual contact for which Cardona had been indicted.  The victim and H.F. were sitting in the back seat of Cardona's vehicle when Cardona placed a sex toy on the back seat and offered it to the victim and H.F. to use.

[¶8]  The State sought to admit evidence of the sex-toy incident to prove Cardona's intent and lack of mistake.  Cardona, although acknowledging that the evidence was "somewhat relevant," objected to its admission, arguing that the admission of the evidence after the disclosure of it on the eve of trial would be unduly prejudicial and that the evidence should therefore be excluded under M.R. Evid. 403.  Cardona also requested a continuance to interview and run a background check on H.F.

[¶9] The court excluded evidence of the sex-toy incident under M.R. Evid. 403, on the basis of "unfair surprise."  The court also suggested that it was balancing the relevance of the sex-toy evidence against the risk that the jury

would consider it as propensity evidence. The court qualified this ruling, however, by stating that its ruling could change as the trial progressed. Specifically, when ruling on the objection, the court stated:

> I'm reserving the right, though, that if the issue is generated, the State can reapproach on it . . . . I'm going to say that the State can't use it unless they seek based on something that was opened. I think there are a lot of issues that could get generated during this trial, so I'm reserving the right to reconsider. But for now, I'm saying that it's not going to come in.

[¶10] The State subsequently asked whether evidence as to Cardona's "alleged concern for this victim's chastity" would open the door to the evidence of the sex-toy incident, to which the court replied that it would.

[¶11] As the trial proceeded, the State made several requests to bring in evidence of the sex-toy incident. On the first day of trial, the victim testified that Cardona would tell her that he saw "petite" girls who reminded him of her. In the CAC interview three years prior, however, the victim had not mentioned these comments when the CAC interviewer had asked the victim if anything else happened in the Cardona home to make her feel uncomfortable. On cross-examination, Cardona asked the victim about this discrepancy and the State objected. At sidebar, the State argued that if defense counsel continued this line of questioning, the State should be permitted to ask the victim about the sex-toy incident. The court responded:

I mean, this might open up a bunch of things. This is what I was talking about. If you open up the can of worms, you might get answers you're not expecting.

Defense counsel asked whether his questioning had opened the door and the court responded:

I'm not saying that's happened yet. I'm just saying to ask a child those kind of questions just — you don't know what she might say, things that made her uncomfortable. But I am going to overrule the objection.

[¶12] During the second day of trial, Cardona sought to introduce evidence of his limited criminal record, which defense counsel had pointed out in opening argument, without objection from the State, to argue that Cardona had no history of sexual offenses. After the State asserted that such evidence would open the door to the sex-toy evidence, Cardona withdrew the question, and the court instructed the jury to disregard the question.

[¶13] Later that day, the State again asked to call H.F. as a witness. The State argued that Cardona had attacked the victim's credibility and that H.F. could corroborate several of the victim's statements regarding her relationship with Cardona. Defense counsel objected and stated, "I thought this matter was settled previously and she would not be called as a witness," to which the court clarified that it never said that. Ultimately, the court ruled that it would allow the State to call H.F. to corroborate the victim's statements but not to testify as

6

to the sex-toy incident.

[¶14]  Also on the second day of trial, Cardona introduced in evidence a video recording of the victim's interview with a police officer.  Cardona had previously indicated intent to play "snippets" of the video.  At trial, the State requested that the entire video be played to the jury pursuant to M.R. Evid. 106,[2] but indicated that it could discuss cutting specific, irrelevant information from the video.  Defense counsel indicated that he was fine with the entire video being admitted, and the entire video was played to the jury.

[¶15]  In this recorded interview, the victim's mother stated that there was a two-year-old ward of the state who was being fostered in the Cardona home, and she and the officer discussed reporting the alleged offense to the Department of Health and Human Services.  After the video finished playing, the court instructed the jury that it could not consider the statements of the officer and the victim's mother as evidence of any factual assertions made by the officer or the victim's mother, but only as part of the jury's overall analysis

---

[2] Maine Rule of Evidence 106 provides that "[i]f a party utilizes in court all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part— or any other writing or recorded statement—that in fairness ought to be considered at the time." M.R. Evid. 106.

of the interview of the victim and in evaluating the victim's disclosure and in making credibility determinations.

[¶16]   Cardona then called the victim's mother as a witness.   After establishing that the victim and her mother frequently visited Cardona's home, defense counsel asked the following questions:

> [Defense counsel:]  [H]ow many children would typically stay there that you would witness when you were picking up [the victim] or dropping [the victim] off?
>
> [Victim's mother:]  On a regular basis, between six or seven, if not a few other friends of the children that go over.
>
> [Defense counsel:]  I think on the video you brought up a — there was a foster child in the home at some point in time?
>
> [Victim's mother:]  Yes.
>
> [Defense counsel:]   And that was a DHHS pla[ce]ment — placement, if you know?
>
> [Victim's mother:]  Yes.
>
> [Defense counsel:]  The — did you think that the Cardona home was a safe place for your children to be at?
>
> [Victim's mother:]  At that time, most certainly, I did.
>
> [Defense counsel:]  The — I think I remember you using — saying that you thought it was very, very safe there?
>
> [Victim's mother:]  Yeah, at that time, I did.

8

[¶17]  At the beginning of the third day of trial, the State renewed its motion to bring in evidence regarding the sex-toy incident.  The State argued that Cardona opened the door to the sex-toy evidence by improperly eliciting testimony that the Department had placed a child in the Cardona home, suggesting that the Department had found the home to be safe.  The State further argued that Cardona elicited testimony about how safe the Cardona home was, and that Cardona improperly introduced evidence of his lack of a criminal record.

[¶18]  In response, Cardona argued again that introduction of this evidence would be an unfair surprise.  Cardona also requested a continuance to obtain a "background check on [H.F.] and to try to interview her and — and what have you."  The State in response noted that H.F. had been on Cardona's witness list and that the defense had been provided with a complete criminal record for H.F.

[¶19]  In ruling, the court noted that although it had previously limited the State from admitting the evidence regarding the sex-toy incident, the evidence had been shared with the defense before trial as soon as the State was aware of it and, relevantly, went to sexual behavior by the defendant toward the victim.  The court then ruled that the evidence regarding the incident would

be allowed, given that H.F. had always been on Cardona's witness list, given all that progressed in the trial proceedings, and given that the State's argument had "suggested . . . a circumstance which the State now ha[d] to be given the opportunity to rebut." The court denied Cardona's request for a continuance.

[¶20] Cardona then argued that a recorded phone call between the victim's mother and him, regarding which the State intended to cross-examine the victim's mother, should be played in full for the jury. The State objected to the playback of the portions of this call that related to the foster child at the Cardona home but noted that the State's argument on this point "is somewhat weakened by Your Honor's agreement to let [H.F.] testify." The court stated that such evidence would be inadmissible, but that "since it ha[d] already seeped in," the court would allow the entire call to be played.

[¶21] Both the victim and H.F. testified that Cardona offered them a sex toy while they sat in the back of his vehicle.

## B.    Exclusion of Evidence of Defendant's Threats Toward Cousin

[¶22] Cardona's theory of the case was that the victim fabricated an accusation to "turn the tables" on him because he had accused the victim's

cousin of having sexual contact with the victim. Cardona's accusations toward the cousin were in evidence.

[¶23] In addition to the evidence of his accusations, Cardona sought to question the cousin about instances in which Cardona threatened to hurt the cousin if the cousin sexually assaulted the victim. The State objected to the line of questioning, and following discussion at sidebar, the court allowed Cardona to conduct a voir dire of the cousin. During the voir dire, the cousin testified that he had directly or indirectly received several threats from Cardona but that he never told the victim about Cardona's accusations. After the voir dire, the court noted that much of the cousin's testimony was hearsay and stated that it was not relevant because "it's not in any way pertaining to [the victim's] allegations. There's zero nexus between any motivation [the cousin] might have . . . and . . . the complaining witness'[s] statement."

[¶24] After this voir dire, evidence was introduced that the victim was aware of Cardona's allegations against the cousin, but the introduced evidence did not indicate that the victim knew that Cardona had threatened the cousin.

## C. Verdict and Sentencing

[¶25] The jury returned a guilty verdict and the court sentenced Cardona to eight years of incarceration, with all but five years suspended, and four years

of probation.  Cardona timely appealed.  *See* M.R. App. P. 2B(b)(1); 15 M.R.S. § 2115 (2025).

## II.  DISCUSSION

**A.    The court acted within its discretion in admitting the evidence of Cardona's subsequent sexual behavior toward the victim.**

[¶26]  Cardona argues that the court erred in admitting the evidence that he had offered the victim a sex toy because he had not "opened the door" to such evidence.

[¶27]   The sex-toy evidence was relevant from the inception of the proceedings to show "the relationship between the parties or the intent of the defendant."  *See State v. DeLong*, 505 A.2d 803, 805 (Me. 1986).  A court has broad discretion whether to exclude relevant evidence as unfairly prejudicial under M.R. Evid. 403, and it would have been well within the court's discretion to admit that evidence initially.  *See State v. Kimball*, 2016 ME 75, ¶ 16, 139 A.3d 914 (holding that "pursuant to M.R. Evid. 403, the trial court has broad discretion to weigh the relevance of evidence against the danger of unfair prejudice to the defendant" (alterations and quotation marks omitted)).

[¶28]  In this instance, the court made clear that its initial ruling was not conclusive.  This was a prudent decision, as we have cautioned trial courts to refrain from making Rule 403 determinations prior to trial.  *State v. Patterson*,

12

651 A.2d 362, 367 (Me. 1994). Both initially and during trial, the court repeatedly stated that its decision was not final. Hence, Cardona could not reasonably rely on the initial ruling.[3]

[¶29] The record in this case further underscores a lack of prejudice from the court's revisitation of its ruling on admissibility. H.F. was on Cardona's witness list; Cardona did not provide any specifics as to a need for a continuance once the court revisited its ruling, other than to obtain a background check (which the State had already provided) and "to try to interview her"; and Cardona has not argued on appeal that the court's rejection of the continuance was an abuse of the court's discretion. *See State v. Hunt*,

---

[3] In *Patterson*, we entertained an interlocutory appeal by the State challenging the exclusion of evidence under Rule 403 in a ruling on a motion in limine shortly before trial. *Patterson*, 651 A.2d at 364-366. In deciding to entertain the appeal, we stated:

Patterson could have also argued that the State's appeal from the order granting his motion in limine is premature because the court might have exercised its discretion in favor of the State during the trial. *See State v. Pinkham,* 586 A.2d 730, 731 (Me. 1991) (ruling on motion in limine does not become final until the evidence is offered at trial). Although we would normally hesitate to entertain an appeal from an order granting a motion in limine for this very reason, *see id.,* the Superior Court justice who granted the motion in the instant case was to preside at Patterson's trial the following week and clearly stated his intention to exclude the contested statements. Not only did the justice state that he was "not going to let them in," he also told defense counsel that he "could go to the bank with that." Under these circumstances, we find that the State's appeal is not premature. *See State v. Shellhammer,* 540 A.2d 780, 782 n.1 (Me. 1988) (appeal from denial of State's motion in limine was not premature because "the record clearly indicates a commitment by the District Court to stand by its ruling at the trial").

*Id.* at 366. We also note that a ruling on a motion in limine does not preserve a Rule 403 objection unless the ruling on the motion is "unequivocally final." *State v. Hassan*, 2013 ME 98, ¶ 40 n.7, 82 A.3d 86.

2023 ME 26, ¶ 16, 293 A.3d 423 (reviewing court's denial of a motion to continue for abuse of discretion).

[¶30]  Hence, whether or not a specific moment in the trial "opened the door" to the evidence is immaterial to our review on appeal.[4]  The question on appeal is simply whether the court's subsequent Rule 403 ruling fell within its broad discretion in balancing relevance against unfair prejudice.  Given that the evidence could have been admitted from the inception of the trial and that nothing presented prior to the court's re-visitation undermined such a determination, there was no abuse of discretion in the court's decision to admit the evidence.

## B.  The court did not err in excluding as irrelevant evidence of Cardona's threats toward the cousin.

[¶31]  Cardona argues that the court erred in excluding evidence that Cardona had threatened the victim's cousin, basing his challenge on the

---

[4]  This is not to suggest that the court could have revisited its Rule 403 ruling for any reason. Certainly, the court could not have decided to admit the sex-toy evidence based on, for example, bias against Cardona, or for any arbitrary reason.  *See Aranovitch v. Versel*, 2015 ME 146, ¶ 13, 127 A.3d 542 ("[A] trial court has exceeded the bounds of its discretion when, in discretionary decision-making, the court . . . considers a factor prohibited by law. . . ." (quotation marks omitted)). But the court's reasoning here was not arbitrary or otherwise impermissible.

To the contrary, the evidence presented as the trial progressed supported the court's revisitation. And the issue was whether Cardona would be unfairly prejudiced by the introduction of the sex-toy evidence, regardless of whether he had opened the door.  After eliciting from the victim's mother her former belief that Cardona's home was safe, Cardona cannot complain that the court considered such evidence in conducting a Rule 403 analysis.  *See State v. Deering*, 611 A.2d 972, 973 (Me. 1992) ("A defendant may not later complain about the effect of evidence he has introduced").

14

grounds that the evidence was both relevant and not offered for the truth of the matter asserted. Evidence of the threats was relevant, Cardona argues, because it tended to show that the victim, or the victim's family, fomented the allegations against Cardona in response to the threats.

[¶32] The court excluded the threat evidence as irrelevant, reasoning that there was "zero nexus between any motivation [the cousin] might have . . . and the . . . [victim's] statement." "[W]e review a trial court's determination of relevance for clear error and its ultimate ruling on admissibility for an abuse of discretion." *State v. Pratt*, 2020 ME 141, ¶ 11, 243 A.3d 469. Where, as here, "the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." M.R. Evid. 104(b).

[¶33] Here, the relevance of the threat evidence was contingent on one of two facts—either that the victim knew of the threats or that the victim's family (who knew of the threats) conspired with the victim to accuse Cardona. Beginning with the first scenario, there was no evidence that the victim knew of Cardona's threats; indeed, the cousin testified in his voir dire that he never discussed Cardona's allegations with the victim. As to the second scenario, there was no evidence that the victim and the victim's family collectively

fabricated the allegation against Cardona. To the contrary, the evidence at trial indicated that the victim's family encouraged her to report any sexual assault, no matter who the perpetrator was, and that the victim then disclosed that Cardona had sexual contact with her. We accordingly perceive no error in the court's determination that the threat evidence was not relevant.

The entry is:

Judgment affirmed.

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Daniel Cardona

Christopher J. Coleman, Asst. Dist. Atty. (orally), Office of the District Attorney, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2022-2229
FOR CLERK REFERENCE ONLY